UNITED STATES v. REID et al.

(District Court, D. Delaware. December Term, 1913.)

No. 3.

1. SEAMEN (§ 34*)—OFFENSES—MUTINY—ELEMENTS.
    Cr. Code, § 292 (Act March 4, 1909, c. 321, 35 Stat. 1146 [U. S. Comp. St. Supp. 1911, p. 1676]), provides that whoever, being of the crew of a vessel of the United States on the high seas, unlawfully confines the master or other commanding officer thereof, shall be punished; and section 293 declares that whoever, being of the crew of a vessel of the United States on the high seas, unlawfully and with force usurps the command of such vessel from the master or other lawful officer in command thereof, or deprives him of authority and command, or prevents him in the free and lawful exercise thereof, is guilty of mutiny. *Held*, in order to warrant a conviction under either of such sections, it must appear that the offense was committed on the high seas on a vessel of the United States, that defendants were members of the crew, and that the person so deprived of command was the master of the vessel or officer in command on board thereof, and while so in command defendants or some of them feloniously confined him and deprived him of the free and lawful exercise of his authority, and also that defendants were apprehended when first brought into the district where the prosecution was instituted.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 220–231; Dec. Dig. § 34.*]

2. CRIMINAL LAW (§ 561*)—INSTRUCTIONS—REASONABLE DOUBT.
    While a person charged with crime cannot be convicted, except on proof beyond a reasonable doubt, such doubt must be one based on reason, or which is reasonable in view of all the evidence, and is not a mere whimsical, arbitrary, or purely speculative doubt, or a mere conjecture or guess.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1267; Dec. Dig. § 561.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CRIMINAL LAW (§ 554*)—TESTIMONY OF ACCUSED—CONSIDERATION.

While accused may testify in his own behalf, his testimony should be weighed in accordance with his interest and the question of its inherent probability or improbability, and as to whether or not it has been corroborated or contradicted by other evidence in the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1255, 1256; Dec. Dig. § 554.*]

4. SEAMEN (§ 34*)—MUTINY—GROUNDS.

Profanity or the use of opprobrious epithets, inconsiderate, insulting, rough, and improper treatment on the part of the officers of a vessel, and occasional violence, not of an unusual character, or the omission to furnish the crew with full allowances required by law, will not justify a mutiny, which can only be defended in case continued service will probably result in loss of life, limb, or other grave bodily harm, in which case the crew may take such action without unnecessary violence as will protect themselves and provide in a reasonable way for their safety, although it may involve placing physical restraint on the master.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 220–231; Dec. Dig. § 34.*]

5. COURTS (§ 352*)—FEDERAL COURTS—TRIAL—INSTRUCTIONS—EVIDENCE.

While a federal court is entitled to call to the jury's attention portions of the evidence which may aid them in arriving at a just verdict, it is nevertheless the duty of the jury to determine for itself the questions of fact, giving the evidence only such weight and effect as they consider it entitled to.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. § 352.*]

6. CRIMINAL LAW (§ 423*)—DECLARATIONS—MEMORANDUM BOOKS.

In a prosecution of members of a crew of a vessel for mutiny on the high seas, so-called logs, kept by two of the defendants, purporting to recount the occurrences on the ship after leaving port and until the mutiny, were admissible only as against them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 989–1001; Dec. Dig. § 423.*]

7. CRIMINAL LAW (§ 857*)—TRIAL—VERDICT—DELIBERATION OF JURORS.

Where a majority of the jurors, after deliberation, differ from the minority, it is proper for the latter to review the grounds of their own conclusion, in order, if possible, that a verdict may be reached; but no juror should acquiesce against his individual judgment in the conclusion reached by his fellows, whether they constitute a majority or a minority of the whole body.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2054, 2055; Dec. Dig. § 857.*]

John David Reid and others were indicted for mutiny on the high seas. Verdict, Guilty.

John P. Nields, U. S. Atty., of Wilmington, Del.
J. Frank Ball, of Wilmington, Del., for defendants.

BRADFORD, District Judge (charging jury). The defendants in this case, John David Reid, Richard Williams, Albin Anderson, Joseph Horsfall, John Edlin, Charles H. Lyons and William Joyce have been indicted for alleged violation of sections 292 and 293 of the criminal code of the United States. The indictment originally contained nine.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

counts, of which only two, namely, the fifth and ninth are open for your consideration, the district attorney having abandoned the others. Section 292, so far as pertinent to this case under the two counts remaining open for your consideration, provides, in substance, that "whoever, being of the crew of a vessel of the United States, on the high seas, * * * unlawfully confines the master or other commanding officer thereof", shall be punished as in that section set forth. Section 293, so far as pertinent to this case under the above mentioned two counts, provides, in substance, that "whoever, being of the crew of a vessel of the United States, on the high seas, * * * unlawfully and with force, * * * usurps the command of such vessel from the master or other lawful officer in command thereof, or deprives him of authority and command on board, or * * * prevents him in the free and lawful exercise thereof, * * * is guilty of a revolt and mutiny," and shall be punished as in that section set forth. The fifth count charges, in substance, that the defendants on the twenty-fifth day of October, 1913, on board of a vessel of the United States called Manga Reva, then bound on a voyage from Philadelphia, Pennsylvania, to San Francisco, California, while on the high seas, namely, on the Atlantic Ocean, the defendants being of the crew of the Manga Reva feloniously did unlawfully confine Henry C. Townsend, the master of the said vessel, and being the officer in command and on board thereof, and that after the commission of the above mentioned offense the defendants were, on the eleventh day of November, in the same year, first brought into the district of Delaware and then and there were apprehended.

The ninth count charges, in substance, that the defendants, on the twenty-fifth day of October, 1913, on board the said Manga Reva, then bound on the above mentioned voyage from Philadelphia to San Francisco, while on the high seas, as above mentioned, the defendants being of the crew and on board of the Manga Reva, feloniously did unlawfully and with force prevent Henry C. Townsend, the master of the said vessel, and on board thereof, in the free and lawful exercise of his authority and command as such master on board the said vessel; and that after the commission of the above mentioned offense the defendants were on the eleventh day of November, 1913, first brought into the district of Delaware and there were apprehended.

[1] In order to warrant a conviction of the defendants, or any of them, under both or either of the counts of the indictment now remaining open, all of the essential ingredients of the offense or offenses therein charged must have been established to your satisfaction beyond a reasonable doubt. To justify a conviction under either of the counts it must appear to your satisfaction that the offense therein charged was committed on the vessel Manga Reva on the high seas, namely, the Atlantic Ocean, and further, that at the time of the commission of the alleged offense the Manga Reva was a vessel of the United States. The uncontradicted evidence is that the Manga Reva was at the time of the commission of the offenses so charged an American vessel, and further that she was at that time on the high seas, namely, on the Atlantic Ocean. It must also appear to your satisfaction, in order to

justify a verdict of guilty against the defendants, or any of them, under both or either of the above mentioned two counts, that they or he were or was at the time of the commission of the alleged offense or offenses members or a member of the crew of the Manga Reva.

It appears from the uncontradicted evidence that all of the defendants signed the shipping articles, in due form of law in all respects, in Philadelphia before the commencement of the voyage in question and became members of the crew of the Manga Reva. It is necessary, also, in order to find a verdict of guilty against all or any of the defendants under the fifth count that you should be satisfied from the evidence that Henry C. Townsend was the master of the Manga Reva and the officer in command on board thereof, and that, while the said Townsend was master of the said vessel and in command thereof on board thereof, the defendants or some one or more of them feloniously did unlawfully confine the said Townsend. The evidence is uncontradicted that Townsend was in command of the vessel and on board of her when the mutiny occurred October 25, 1913, whereby the defendants, or some of them, did confine him.

It is necessary, also, in order to find a verdict of guilty against all or any of the defendants under the ninth count that you should be satisfied from the evidence that Henry C. Townsend was the master of the Manga Reva and on board thereof, and that the defendants or some one or more of them feloniously did unlawfully and with force prevent the said Townsend while master on board of the said vessel, in the free and lawful exercise of his authority and command as such master on board the said vessel. As before stated, the evidence is uncontradicted that Townsend was in command of the vessel and on board of her when the mutiny occurred October 25, 1913, whereby the defendants, or some one or more of them, did with force prevent him while so master and on board of the vessel in the free exercise of his authority and command as master so on board.

It is further necessary to justify a verdict of guilty against all or any of the defendants under both or either of the two counts remaining open for your consideration, that after the commission of the offense charged they or he were first brought into the district of Delaware, and then and there were or was apprehended. This appears from the uncontradicted evidence.

[2] The law presumes that persons charged with crime are innocent until they are proved by competent evidence to be guilty. This presumption stands as their sufficient protection unless it has been overcome by the evidence in the case, taken as a whole, proving their guilt beyond a reasonable doubt. To justify a verdict of guilty the evidence in the case as a whole must be such as to exclude every reasonable hypothesis but that of the guilt of the defendants, or one or more of them, as charged in the indictment; and from this it, of course, follows that if the jury find that all the evidence in the case when taken together is as compatible with the theory of innocence as with the theory of guilt there should be an acquittal. The commission of a criminal offense can be proved by circumstantial evidence as well as by direct evidence, provided the circumstances proved, together with all reasonable inferences to be drawn from them, are such as to leave no

reasonable doubt in the minds of the jury that the defendants, or one or more of them, are or is guilty. You are to take into consideration all the evidence in this case, both direct and circumstantial, documentary and oral, together with all reasonable inferences to be drawn from that evidence, in arriving at a conclusion.

A reasonable doubt is a doubt based on reason, and which is reasonable in view of all the evidence. It is not a whimsical, arbitrary or purely speculative doubt, nor a mere conjecture or guess. If after an impartial comparison and consideration of the evidence you can candidly say that you are not satisfied of the defendants' guilt you have a reasonable doubt; but if, after such impartial comparison and consideration of all the evidence you can truthfully say that you have a fixed conviction of the defendants' guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt, and in that case should find a verdict of guilty. Absolute certainty is not required for such a verdict. Proof beyond a reasonable doubt as above defined is sufficient.

[3] The law permits a defendant at his own request to testify in his own behalf. The defendants here have availed themselves of this right. Their testimony is before you and you must determine how far it is credible. The deep personal interest which they have in the result of the case should be considered by you in weighing their evidence and in determining how far, or to what extent, if at all, it is worthy of credit. In considering the credibility of or weight you should attach to the testimony of the defendants you should regard, among other things, the inherent probability or improbability of their statements, and to what extent they have been corroborated or contradicted by other evidence in the case whether documentary or oral. Where a witness has a direct personal interest in the result of a case, especially of a criminal case, the temptation is strong to color, pervert or withhold the facts.

[4] We live in an age strongly characterized by mawkish sentimentality and disregard for law, when sound judgment and the sense of justice only too often yield to undeserved sympathy for those convicted or accused of grave crime; and it is important that juries and others charged with the administration of the criminal laws of the land should as far as possible divest themselves of any such tendency and, while according to those on trial for alleged crime the full legitimate force of the presumption of innocence, nevertheless, when guilt is established beyond a reasonable doubt, at once vindicate the majesty of the law and promote the enforcement of the principles of public policy. These remarks are especially applicable in the case of alleged offenses in their nature calculated to be so destructive of life and property and injurious to commerce as mutiny on the high seas. The safety of the lives of the crew and of the officers, as well as of the vast property afloat in the commercial marine, largely depends upon strict discipline enforced by masters of vessels, and the obedience of the crew to their orders. There must be no insubordination, no disobedience, no violence, toward those who by law and contract are to rule and not be ruled on board the ship. This broad principle is subject to the

qualification dictated at once by humanity and common sense that where during the voyage unlawful acts or threats of the master produce a reasonable conviction existing at the time of a mutiny in the minds of the crew that continued service on the vessel will result in loss of life, limb or other grave bodily harm to them, they may take such action without unnecessary violence as to protect themselves against him and provide in a reasonable way for their safety, although it involve placing physical restraint upon him. But, as above indicated, there must be cause of the most imperative nature to justify a resort to mutiny on the high seas. Profanity or the use of opprobrious epithets will not suffice. Nor will the circumstance that the officers of a ship may have been merely rude, rough, insulting and inconsiderate afford such justification; nor occasional violence not of an unusual character on the part of the officers or an omission to furnish to the crew as required by law the full allowance, according to the measure prescribed in the shipping articles, of wholesome food and water to which they may be entitled.

For the furnishing of insufficient or unwholesome food, or for unjustifiable blows, or rough and abusive treatment suffered by the crew at the hands of the master, not sufficient to reasonably create in their minds a conviction that further association with him on the vessel would result in loss of life or limb or other grave bodily harm, the statutes of the United States provide for ample redress to the seamen upon the arrival in port of the vessel. Further, before resorting to a mutiny, whether for insufficient food or water, or other cause not *immediately* destructive of life or limb, or *immediately* productive of other grave bodily harm, it is incumbent upon those who are dissatisfied, to make, if practicable, application in a quiet and orderly manner to the master or other officer in command of the ship for a redress of their supposed grievances, and to afford him a fair opportunity of considering the subject and taking proper action in the premises. Without making application and affording such an opportunity under such circumstances there can be no justification for precipitating a mutiny, which might otherwise be avoided. You are to determine whether it was or was not practicable for the defendants or some of them in behalf of the rest to make such an application to Captain Townsend, and if so, whether they performed their duty in that regard. A crew must exhaust all reasonable efforts for relief from alleged hardships before resorting to mutiny; otherwise there can be no justification for it either in law or common sense. Mutiny involves too grave consequences to be lightly and unnecessarily indulged in.

[5] While the court will bring to your attention some of the evidence on both sides you are instructed that you are not in the least bound by anything which has been or shall be stated by the court in that connection, but are to exercise your own independent judgment as to its force and effect. While it is my duty to call to your attention certain portions of the evidence which in the judgment of the court may aid you in arriving at a just verdict, you are to give to the evidence only such weight and effect as you consider it entitled to. It is for you to determine whether the testimony of the defendants and certain other members of the crew as to shortage of food and water,

abuse, rough usage and violence on the part of the captain and first mate is literally or substantially true, or, on the other hand, a plausible fabrication concocted for the purpose of shielding them from the consequences of unlawful and criminal action in the seizure of the Manga Reva and her officers.

It is fair to assume that the defendants would not have engaged in the mutiny if they had been satisfied with the condition of things and course of events on the Manga Reva. But this assumption leaves open the question whether they had any justifiable cause for embarking on such a perilous and desperate enterprise as the seizure of the ship, confining and putting the master in irons and stripping him of his lawful authority. A mutiny on the high seas is a matter of gravest moment, fraught with peril to life, ship and cargo, and can be excused or justified only by the most exigent circumstances. In considering the contention of the defendants that there was justification for the mutiny you are met at the threshold with the question of inherent probabilities. The inherent probability or improbability of the truthfulness or correctness of oral evidence is always proper to be taken into account by the jury, and where the oral evidence is conflicting the consideration of such probability or improbability is often of much importance.

You may well consider whether it is or is not probable that the master of such a ship as the Manga Reva should find it to his interest, by starvation, famishing or violence to incapacitate his crew for the successful accomplishment of the voyage; and whether any excessive stinting of the crew with respect to drinking water and food would or would not have been a penny-wise and pound-foolish course for the master or owners of the vessel to pursue. There is uncontradicted evidence that the Manga Reva left the port of Philadelphia amply provided with food and water for the contemplated voyage; and the testimony, not only of the captain, but of a number of other witnesses, touching the quality of the food is fresh in your recollection. There is also uncontradicted evidence that neither the food nor the water belonged to the captain of the vessel and that he had no direct pecuniary interest in decreasing the quantity of food and water for the use of the defendants.

The laws of the United States provide that it is unlawful to reduce during a voyage the allowance of provisions which any seaman is entitled to receive under the schedule forming part of the shipping articles, except under circumstances not pertinent in this connection; and the criminal code of the United States provides that the master of an American vessel on the high seas who withholds from its crew suitable food and nourishment or inflicts upon them any cruel and unusual punishment shall be fined not more than $1,000 or imprisoned not more than five years, or both. With this highly penal provision staring him in the face and with an abundance of food and water on the Manga Reva, if such you find to be the fact, is it or not probable that he should have stinted the crew as testified to by or on behalf of the defendants? Under these circumstances it will be for you to determine whether the defendants engaged in the mutiny because they had a reasonable conviction at the time that otherwise they would suffer loss of life or limb or grave bodily harm, or for some other reason not acknowledged by

them, and if so, what that reason was. It appears from the testimony given by some of the defendants that they were disposed to resent the opprobrious epithets applied to them by the officers of the Manga Reva, and there is also testimony that a considerable proportion of the crew of that vessel consisted of green-hands, a majority of them being foreigners and a number of them being unable to speak or understand the English language. There is also evidence to the effect that the defendants had received an allotment of wages in advance more than covering the period from their signature of the shipping articles to the day of the mutiny. It is fair that you should consider these circumstances in connection with the question whether it is or is not more probable that their motive in engaging in the mutiny was to escape a disagreeable service without loss of wages, rather than fear of loss of life or grave bodily harm from continuing on the voyage. The defendants have unqualifiedly testified, in substance, that such an abusive and violent course was pursued toward them by the officers of the Manga Reva up to the time of the mutiny, and that they were so stinted in food and water as to create a firm belief on their part that their continuance on the voyage would result in their death or grave bodily harm, and that they made prior to the mutiny complaint of their grievances to the master of that vessel.

[6] In connection with this testimony by the defendants and sundry other members of the crew, it is proper that you should bear in mind the two so-called logs kept by the defendants Joyce and Horsfall respectively, which purported to recount the occurrences on the Manga Reva after leaving Philadelphia and until the mutiny. It is proper that I should state to you, as was stated to the counsel at the time they were offered, that these two small books were admitted in evidence only as against the two defendants who kept them as containing admissions on their part as to the condition of things on the Manga Reva. While they are evidence only as against those who made the entries therein, still the court has no hesitation in charging you that if you find from all the evidence in the case that they contain a full recital of the grievances or grounds of complaint of the defendants such grievances or grounds of complaint furnish no excuse or justification for the commission of the offenses charged in the fifth and ninth counts of the indictment. And so far as the testimony of Joyce and Horsfall is concerned it is for you to determine how far it is affected or discredited, if at all, by the entries made by them. The jury are at liberty to take into consideration the demeanor and language of the defendants on the witness stand in connection with the evidence in the case as bearing on the question how far mere abusive language and rough handling would cause them to fear for their lives. It is hardly necessary to state that the foreign seamen on board the Manga Reva were just as much, but no more, entitled to rights and protection under the law as the American seamen. No discrimination can be made by you between them on account of mere nationality.

It is unnecessary to refer save incidentally to the evidence of Lee Wallace who testified to his participation in the mutiny, for the reason that his evidence was confined to a statement of the manner in which the captain and officers of the Manga Reva were seized and dis-

posed of on that occasion; there being no substantial conflict between Wallace and the defendants as to the points covered by his testimony.

While it is the province of the court to deal with the law of the case, it is exclusively your province to pass upon the facts. It is your duty to consider the evidence in the case as a whole and not give undue importance to minor points or portions of the evidence taken piecemeal. A criminal case involving much testimony and many facts should not be decided upon the probability or improbability of any one point singled out of the evidence, but a. proper decision requires due consideration to be given to all the evidence, direct and circumstantial, in the case. You are the sole judges of the credibility of witnesses and of the weight to be given to their testimony, and the effect of the evidence. And I again say to you that nothing I have said touching the evidence in this case, or inferences to be drawn therefrom, should in· any manner affect your decision, excepting in so far as it may commend itself to your judgment; you being the exclusive and uncontrolled judges of the facts.

The court has been requested to give you instructions on a number of points of law in the language employed by the counsel in the case. The charge of the court embraces in substance all the propositions suggested by counsel in so far as those propositions are, in the opinion of the court, properly applicable to the case.

[7] Your verdict should represent the opinion of each member of your body, after an intelligent and conscientious comparison and consideration in the jury-room of the views of the individual jurors. Your investigation of the evidence should be marked· with due deliberation, and your minds should remain open to conviction by arguments which commend themselves to your judgment. The very object of the jury system is to secure unanimity through comparison of the views and through arguments among the jurors themselves. If a large majority of the jurors after deliberation in the jury-room differ in their conclusion with the minority, it is proper for those composing such minority, in view of the fact of ·such difference, to review the grounds of their own conclusions in order that, if possible, unanimity may be reached in accordance with the principles of law heretofore laid down. But no juror should acquiesce against his individual judgment in the conclusions reached by other jurors, whether constituting a majority or a minority of your whole body. For your verdict must represent the real opinion and judgment of each member of the jury. The guilt or innocence of the defendants, or of one or more of them, is to be determined by you as intelligent and conscientious men, upon the evidence adduced in this case and upon that alone. A grave and solemn responsibility rests upon you. No public clamor, no consideration of consequences which may result from your verdict, either to the government or to the defendants should be permitted in any manner to influence your deliberations or control your verdict.

If upon all the evidence in the case you are not satisfied beyond a reasonable doubt of the guilt of the defendants, or any one or more of them, there should be a general verdict of not guilty, but if upon all the evidence in the case you are satisfied beyond a reasonable doubt

that the defendants, or one or more of them, are or is guilty in manner and form as charged in the said two counts, or either of them, you should return a verdict of guilty as to them or him on the said two counts or either of them as the evidence shall warrant.