**MYRES v. UNITED STATES.**

No. 13714.

United States Court of Appeals
Eighth Circuit.

May 13, 1949.

Rehearing Denied June 13, 1949.

John H. Flanigan, Sr., of Carthage, Mo., James J. Waters, of Kansas City, Mo., and Frank B. Williams, of Springfield, Mo. (Edward V. Sweeney, of Monett, Mo., on the brief), for appellant.

Sam M. Wear, U. S. Atty. and Harry F. Murphy, Asst. U. S. Atty., both of Kansas City, Mo., for appellee.

Before SANBORN, RIDDICK, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

The United States, by an indictment in four counts, filed in August, 1947, charged the defendant (appellant) with four willful attempts to defeat and evade his federal income taxes for the years 1941, 1942, 1943 and 1944 by filing a false and fraudulent income tax return for each of those years.[1] The defendant entered a plea of not guilty. The case was tried to a jury, which returned a verdict of guilty upon all counts. From the sentence entered upon the verdict, the defendant has appealed. He asserts that the sentence was invalid because: (1) the evidence was insufficient to sustain the verdict; (2) the District Court committed prejudicial errors relative to rulings on evidence and instructions to the jury; and (3) counsel for the government were guilty of misconduct which rendered the trial unfair.

There are several considerations which must be kept in mind on review of a case such as this:

1. In determining the sufficiency of the evidence to support the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government, and give to the government the benefit of all inferences which reasonably may be drawn in its favor. Affronti v. United States, 8 Cir., 145 F.2d 3, 5, and cases cited.

2. The burden of demonstrating prejudicial error is upon the appellant. Marin v. Ellis, 8 Cir., 15 F.2d 321, 322; Metropolitan Life Insurance Co. v. Armstrong, 8 Cir., 85 F.2d 187, 195; Kimball Laundry Co. v. United States, 8 Cir., 166 F.2d 856, 859.

3. If the defendant was properly convicted upon any count of the indictment, the judgment appealed from must be affirmed, since the sentence upon all counts was less than the maximum sentence which could have been imposed under any one count. Gantz v. United States, 8 Cir., 127 F.2d 498, 501; Bowen v. United States, 8 Cir., 153 F. 2d 747, 748-749, and cases cited.

The defendant is a member of the Missouri Bar, engaged in the active practice of law at Monett, Missouri. He has specialized in personal injury and death cases. At the time of his trial he was 48 years of age, married, but childless. He came to Monett in 1934. From that time until December 30, 1944, he was associated with Mr. F. P. Sizer, of Monett, first as an investigator and later as a member of the firm of Sizer & Myres. Mr. Sizer was a much older lawyer, whose practice, largely confined to the personal injury field, extended over Arkansas, Kansas, Oklahoma and Missouri. The defendant, by January 1, 1941, had acquired a 40 per cent interest in the firm's business. On March 1, 1941, he "was made full partner on all business, future business, to be taken into the office." He was "given a full 50 per cent of all business brought into the office after that date." There was no written partnership agreement. No books of account were kept by the firm or by the defendant prior to January 1, 1945. The defendant kept a record of certain bills that he paid for the firm, from year to year. The firm had case files. Moneys received by the firm were ordinarily deposited in the Gillioz Bank & Trust Company, of Monett, Missouri, in one of three accounts carried on the bank's books as "William J. B. Myres, Trustee," "William J. B.

---

[1] The indictment is based on 26 U.S.C. A. § 145(b), which, so far as pertinent, reads as follows: " * * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

Myres," and "Sizer & Myres." Business expenses were usually paid from these accounts. Mr. Sizer died December 30, 1944, and the defendant took over the firm's business and assets under an arrangement made with Mr. Sizer prior to his death.

For the years 1941 to 1944 inclusive, the defendant filed joint income tax returns for himself and wife. According to his returns, his net income and income tax liability for each of the years in suit were as follows:

| | Net Income | Tax Liability |
| ---- | ---------- | ------------- |
| 1941 | $4,142.75 | $263.97 |
| 1942 | 1,634.30 | 6.51 |
| 1943 | 1,702.57 | 142.51 |
| 1944 | 2,740.34 | 415.28 |

The source of the defendant's income during the years in suit was his interest in the business of the firm of Sizer & Myres. The government, in 1944 and 1945, conducted an investigation of the defendant's income tax returns and had some correspondence with him relative to his returns for 1942 and 1943. In June, 1945, a Revenue Agent by the name of Starr called upon the defendant in Monett and advised him that he (Starr) had the defendant's 1942 and 1943 returns to investigate. According to the evidence of the government, which, for the purposes of review, we must accept as true, Starr asked the defendant what records he kept of the income and expenses of the law business. The defendant stated that he had no books, no records, no cancelled checks, no check stubs, no case files for cases closed in 1942 and 1943; that the reason he destroyed cancelled checks, check stubs and case files was that "there had been disbarment proceedings brought against him and Mr. Sizer several years before, and that after they had been exonerated in those disbarment proceedings, Mr. Sizer would not keep any kind of records for fear someone might get in and see them." The defendant told Starr about the bank accounts and consented to their examination. The Revenue Agents assigned to the investigation of the defendant's returns laboriously reconstructed the net income and tax liability of the defendant for the years in suit from the records of the bank, from interviews with clients of the firm, and from other available sources of information relative to the receipts and disbursements of the firm of Sizer & Myres and of the defendant.

Upon the trial, the government, in order to prove its case, was forced to bring into court all of the witnesses whose testimony was necessary to establish a sufficient foundation for the introduction of the schedules and computations made by the Revenue Agents disclosing their reconstruction of the defendant's income for the years in suit. The government's evidence tended to show that, for each of the years 1941, 1942, 1943 and 1944, the defendant had grossly understated his net income and his tax liability, and that his expenditures during those years greatly exceeded his reported income. According to the government's figures, the defendant's net income and income tax liability for the years in suit were as follows:

| | Net Income | Tax Liability |
| ---- | ----------- | ------------- |
| 1941 | $22,490.76 | $ 5,723.40 |
| 1942 | 13,690.87 | 3,502.16 |
| 1943 | 9,636.25 | 2,347.06 |
| 1944 | 25,126.74 | 10,373.58 |

At the close of the government's evidence, the defendant moved for a verdict of acquittal, which was denied.

The defendant's evidence tended to show that his returns for the years in question were prepared with care, were believed by him to be correct at the time they were filed, and were made without any intent to evade or defeat his income taxes; that he had been willing and anxious at all times to cooperate with the government's Agents in ascertaining the correct amount of his tax liability for those years; that he had the case file in every case that the firm of Sizer & Myres had handled during those years and had all the cancelled checks drawn upon the several accounts in the Gillioz Bank & Trust Company; and that the reason he had not furnished the case files and the cancelled checks to the Revenue Agents was that they had not asked for them.

The evidence of the accountants employed by the defendant to reconstruct his income and income tax liability on the basis of the information derived from the

files, checks and other information furnished them by the defendant tended to show that, while the defendant had understated his net income and his tax liability for each of the years in suit, his understatements were not nearly so great as the government asserted. According to the calculations of defendant's accountants, his net income, tax liability, and tax deficiency in each year were as follows:

| | Net Income | Tax Liability | Deficiency |
| --- | --- | --- | --- |
| 1941 | $6,767.10 | $ 644.88 | $380.91 |
| 1942 | 2,009.27 | 134.47 | 127.76 |
| 1943 | 2,512.77 | 310.51 | 168.00 |
| 1944 | 5,879.35 | 1,230.01 | 814.73 |

The main reason for the difference between the government's figures as to net income and tax liability and those of defendant's accountants, who testified at the trial, is that, in computing net income, the government assumed that the defendant was entitled to deduct 50 per cent of the business expenses of the firm paid by him; while the defendant's accountants, on the basis of information given them by defendant, took the position that he was entitled to deduct all of the business expenses of the firm paid from the defendant's personal bank accounts and one-half of the expenses paid out of the firm's bank account. In other words, the government's position was that the defendant shared equally in the receipts and expenses of the business; while the defendant's position was that he received half of the income, but bore more than half of the expenses.

■ The first contention of the defendant is that he was entitled to a directed verdict of acquittal; that the decision of the Supreme Court in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, precluded his being convicted under § 145 (b) of the Internal Revenue Code. We cannot agree. A similar contention was rejected by this Court in Cave v. United States, 8 Cir., 159 F.2d 464, certiorari denied 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856. Compare, Rick v. United States, D.C.Cir., 161 F.2d 897. In Cave v. United

States, supra, this Court said, page 467 of 159 F.2d: " * * * The crime denounced by § 145(b) of willfully attempting to defeat or evade the tax is complete when the taxpayer willfully and knowingly files a false and fraudulent return with intent to defeat or evade any part of the tax due the United States. Guzik v. United States, 7 Cir., 54 F.2d 618, 619, certiorari denied 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937; Bowles v. United States, 4 Cir., 73 F.2d 772, 774."

■ In the instant case the defendant's return for each of the years in suit was false. The following inferences, we think, reasonably can be drawn from the evidence, viewed in the aspect most favorable to the government: (1) that the defendant knew that his return for each year was false, and (2) that he filed it with intent to defeat or evade a part of the tax due the United States. One may be presumed to intend the necessary and natural consequences of his acts. Reynolds v. United States, 98 U.S. 145, 167, 25 L.Ed. 244; Toof v. Martin, 13 Wall. 40, 48, 80 U.S. 40, 48, 20 L.Ed. 481; Wager v. Hall, 16 Wall. 584, 599, 83 U.S. 584, 599, 21 L.Ed. 504; General Motors Acceptance Corporation v. United States, 6 Cir., 40 F.2d 599, 600; Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 419, 150 A.L.R. 1056, certiorari denied 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074. The District Court committed no error in refusing to direct a verdict of acquittal.

[8, 9] At the close of the first day of the trial, counsel for the defendant, after the court had announced a recess until the following morning, requested that the jury be admonished not to discuss the case. The judge said: "They have already received that admonishment." The following morning, counsel for the defendant took exception to what the judge had said about having admonished the jury and about counsel not addressing the judge while he was leaving the bench after recess had been announced.[2] It appears that the jurors were kept together from the inception of the trial, and that there was at no time any danger of outside interference. The judge

---

[2] The record does not show that counsel for defendant were rebuked for addressing the judge after recess was announced, but, if they were, it was not reversible error. Cf. Goldstein v. United States, 8 Cir., 63 F.2d 609, 612–614.

was obviously under the impression, at the time counsel made the request that the jury be admonished, that he had given the usual admonition. After the defendant took his exception, the judge, before announcing another recess, stated to the jury that attention had been directed to his failure to tell them not to discuss the facts of the case until it was finally submitted; that he was sure that they had had this same admonition given them in other cases; and that they were not to discuss the facts until the case was finally submitted for their consideration. It is contended that the decision of this Court in Winebrenner v. United States, 8 Cir., 147 F.2d 322, requires a reversal of this case because of this incident. The defendant is mistaken about that. In the Winebrenner case, pages 326–329 of 147 F.2d, this Court reversed because the language used by the trial court in admonishing the jury permitted them to discuss the case among themselves during the trial, provided they formed no definite conclusion before it was finally submitted. That case is not authority for the proposition that it is fatal error for a trial judge to neglect for one day to admonish a jury not to discuss a case among themselves, and particularly where there is no possible basis for supposing that they did discuss it or that the forgetfulness of the court had impaired, in the slightest degree, the defendant's chances for an acquittal.

The defendant contends that testimony relating to the physical condition of F. P. Sizer during the years 1943 and 1944 was improperly received. We think there was no impropriety in permitting the government to show that the defendant was the active and able-bodied member of the firm during that period. Since the evidence was admissible, the motive of the government in introducing it is of no consequence.

Errors are asserted with respect to the admission of evidence showing payments of fees to Mr. Sizer by clients of the firm. It is argued that, unless these payments were traced into the defendant's hands, they should not have been considered. The payments were made to the defendant's firm, and there was no presumption that Mr. Sizer did not account for what he received. The evidence was admissible, although its weight was for the jury.

The evidence of Starr, the Revenue Agent, as to "miscellaneous deposits" in the defendant's bank accounts, about which the defendant complains, was merely an explanation of Starr's allocation of the defendant's unidentifiable receipts during the years in suit. No prejudicial error was committed in receiving Starr's explanation of his computations and schedules.

The assertion that the court unduly limited the cross-examination of Starr by sustaining an objection to a question asked him as to whether, under the Internal Revenue Code and the Treasury Regulations, the rental of an apartment over a law office by a member of the firm, who used the apartment for both business and living purposes, was deductible as a business expense, is without merit. Starr had testified that he did not allow the defendant a deduction for the rent of the apartment because he regarded it as a personal expense. The court properly ruled that, in the absence of any evidence that the apartment was used for business purposes, the question was improper and called for a legal conclusion. Moreover, the extent of cross-examination rests in the sound discretion of the trial judge. United States v. Manton, 2 Cir., 107 F.2d 834, 845. Compare, Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624, and District of Columbia v. Clawans, 300 U.S. 617, 632, 57 S.Ct. 660, 81 L.Ed. 843.

The defendant argues that Starr should not have been permitted to testify as to the total gross deposits in the defendant's bank accounts and in the Sizer & Myres account during each of the four years. The defendant asserts: "The injurious effect of these huge, though irrelevant, figures is not difficult to perceive. It would be futile to expect the jury, while endeavoring to determine appellant's taxable income, to disregard those gigantic sums." We perceive no logic in this argument. The government was entitled to show upon what figures Starr based his computations and schedules, and it was necessary for the defendant's own account-

ants to start with substantially the same figures.

The recordak films which were part of the records of the Gillioz Bank & Trust Company, and with which the Revenue Agents worked in reconstructing the defendant's income for the years in question, were admitted in evidence over defendant's objection that they were not the best evidence. We think they were admissible. United States v. Manton, 2 Cir., 107 F.2d 834, 844-845. Their accuracy was not questioned. The defendant apparently at all times had the cancelled checks of which the bank had recordak facsimiles. The defendant demonstrates neither error nor prejudice in the admission of these films.

The defendant contends that the court permitted the government to propound improper hypothetical questions to Starr, its expert witness; that this invaded the province of the jury; and that the questions omitted essential and material facts in evidence. It is seldom that a hypothetical question does not meet with this same objection. See Svenson v. Mutual Life Insurance Co. of New York, 8 Cir., 87 F.2d 441, 445. This is a field of inquiry which safely may be intrusted to the sound discretion of the trial judge. There is no reason why a jury should be deprived of any assistance that an expert witness can give. Whether the views of Starr or those of Cuneo, defendant's expert, as to proper exclusions or inclusions in computing the defendant's income taxes for the years in suit were to be accepted, was for the jurors to decide for themselves. Compare, Guzik v. United States, 7 Cir., 54 F.2d 618, 619-620.

The court denied a request of the defendant to charge the jury to disregard dividends of $600 credited to the brokerage account of the defendant's wife in 1943, without his knowledge, by a broker with whom he and she had trading accounts. The court refused the request on the ground that the government made no claim that the defendant had received any income from that account. During the trial, the court had stated, in the hearing of the jury: "The Government concedes Mr. Myres had no income from his brokerage accounts during those years." It seems clear that by the time the case was submitted, no significance could possibly have been given by the jury to the $600 credited to the brokerage account in the year 1943. Moreover the asserted error affected only the third count of the indictment.

The court denied a request of the defendant to charge the jury with respect to the asserted adequacy of Sizer & Myres' system of accounting and the immateriality of the failure of the firm to maintain a better system. The court instructed the jury, in substance, that the manner and form in which the firm kept track of income was immaterial if the amount of income of its members could reasonably be ascertained from its system of accounting, but that, if the firm and its members kept no books from which their income could be ascertained, that fact should be taken into consideration, with other facts and circumstances shown by the evidence, in determining the issue of the willfulness with which the defendant was charged. In our opinion, the defendant was not entitled to a more favorable instruction in regard to his or the firm's keeping of financial records.

On or about December 20, 1944, some ten days before Mr. Sizer died, the defendant agreed to purchase Sizer's one-half interest in the law business, the library and the furnishings of the office. It was agreed that the defendant should pay $2,000 for the library and furnishings and $8,000 for Sizer's one-half of the pending cases. Nothing was paid on this account in 1944, but the defendant testified that, in computing his taxable income for 1944, he had deducted the $8,000 from his gross income, in the belief that it was a proper business deduction in that year. There was no disclosure of this $8,000 deduction in the defendant's 1944 income tax return. The $8,000 was concededly deducted again in computing the defendant's 1945 income tax liability, and this upon the advice of his accountant, who considered that the item was deductible in the year it was paid and not in the year the liability was incurred. See Capital Warehouse Co., Inc., v. Commissioner of Internal Revenue, 8

Cir., 171 F.2d 395, 397. The court charged the jury that the defendant's income for 1944 should be increased by $8,000; that he could not deduct that item in both years; and that "contradictory action taken by the defendant, together with all the other facts and circumstances shown in the evidence, may be considered by you when you come to determine the willfulness with which the defendant acted, if any." The defendant asserts that this charge was unwarranted by the evidence; that Milo Lang, the accountant who had assisted the defendant in preparing his 1944 income tax return, suggested to him (in 1946) that he take the deduction in his 1945 return because it might be "knocked out" of his 1944 return. The difficulty with the defendant's position in this regard is that his 1944 return disclosed no such deduction, and that Mr. Lang testified that it was after he had prepared the defendant's returns for 1944 and 1945 that he learned for the first time that the defendant had deducted the $8,000 from gross income for the year 1944. In the light of the evidence most favorable to the government, it appears that the defendant took an improper and undisclosed deduction of $8,000 in 1944, and, without advising his accountant of that fact, had him deduct the same item in 1945. The court did not err in its instructions as to the impropriety of the defendant's taking a deduction in both years or as to the probative value of this circumstance. The jury was free to believe that the defendant acted in good faith in deducting in 1944 the $8,000 which he had not expended in that year.

 The court denied defendant's request to charge the jury to disregard the brokerage accounts and stock market transactions of the defendant and his wife, which showed no net profit. The evidence was that the defendant was speculating unsuccessfully on the market. While his brokerage transactions were necessarily involved in the case, the government made no claim that he received any income from his speculations. The court told the jury that "The Government does not in this case seek to charge defendant with any earned income from investments made by him in stock or grain transactions in either of the years in question."

 The defendant argues that the court erred in instructing the jury that a taxpayer who keeps books of account or records from which his net income can be ascertained is required to produce them at reasonable times for inspection by government Revenue Agents, and that the failure or refusal of such a taxpayer to produce his books and records is a circumstance which might be considered in determining the issue of willfully filing a false return. The defendant asserts that this instruction was highly prejudicial because it implied that the defendant had books or records and that he concealed them from the Revenue Agents. It is true that the defendant had no books of account, but he did have the case files of the firm, some memoranda as to expenses, and all of the cancelled checks upon the several bank accounts. That these were helpful to his own accountants in reconstructing his income is apparent. His withholding this assistance from the Revenue Agents was entitled to significance, particularly in view of his professed willingness to help them and his failure to do so. The defendant also contends that the charge in this respect misstated the law and is contrary to the Fifth Amendment to the Constitution of the United States relative to self-incrimination. We fail to see how the defendant's privilege against self-incrimination was in any way involved in this case. He testified, in effect, that he was ready, willing and able, at all times, to give to the government agents everything he had in the way of records, but that the agents did not ask for them.

 The defendant complains of that portion of the court's charge in which the evidence of the division of fees and expenses of the partnership is discussed and commented upon. Taken as a whole, we think the instructions complained of are unobjectionable. That one claiming to be a full partner, and apparently doing most of the work of the firm, would assume the payment of far more than his proportionate share of the expenses of carrying on the business, has certain in-

herent improbabilities which a court and jury are not compelled to ignore. A federal judge has the right in a jury case to comment upon the evidence and to express an opinion as to the facts, so long as he does not indulge in advocacy and makes it clear to the jury that his comments and opinion relative to the facts are not binding upon them. Buchanan v. United States, 8 Cir., 15 F.2d 496, 497–498; Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 58 L.Ed. 319; Horning v. District of Columbia, 254 U.S. 135, 138, 41 S.Ct. 53, 65 L.Ed. 185. The trial judge in the instant case prefaced the portion of the charge which is complained of here, with the statement: "What I have said to you, ladies and gentlemen, in this charge relates to the law of this case. It is definitive of the issues you are to determine. That part of this charge is binding upon you. What I shall hereafter state will relate to mixed questions of law and fact in the case, which I think should be called to your attention so as to lead you to an intelligent consideration of the issues which I have previously defined. What I say concerning the facts of the case of course is not binding upon you. As I say, you are not to be influenced concerning any fact in the case by any reference that I may make thereto in the charge. It is not my purpose to express to you any opinion that I may have concerning the facts of this case, or the guilt or innocence of the defendant. If I did, you would not be bound by an opinion I express."

The defendant's first assertion of misconduct against counsel for the government relates to counsel's reference to the defendant's suspension for one year from the practice of law by the Supreme Court of Oklahoma, upon charges of "receiving money of his client which he failed, neglected, and refused to pay over." See In re Myres, 172 Okl. 123, 43 P.2d 773. The government, early in the trial, called Ed Salzer, of Monett, who testified, on direct examination, that he had sold defendant a piece of real estate for $1,800. On cross-examination, Salzer was asked about the defendant's general reputation for honesty, fair dealing and integrity. This was improper cross-examination, but no objection was made. Salzer testified that he had heard no adverse criticism of the defendant prior to the time he was indicted. On redirect examination, counsel for the government asked: "Did you hear that he [defendant] had been disbarred for embezzlement in Oklahoma by the Supreme Court?" The usual objections followed, leading to a motion for a mistrial. After a colloquy between the court and counsel, the court made the following statement to the jury: "Ladies and gentlemen of the jury, the Court is informed by counsel that there were no disbarment proceeding against the defendant in this case in the state of Oklahoma. As a consequence of that you will disregard the questions and answers in that connection, of the preceding witness. It should not influence you in any respect in arriving at your verdict in this case."

Thereafter, counsel for the government, in cross-examining several of the defendant's character witnesses, asked if they had heard of the defendant's suspension by the Supreme Court of Oklahoma, but the District Court sustained objections to the question. We think the court did all that it was required to do under the circumstances, and that the conduct of government counsel, who had a basis for his inquiries, did not render the trial unfair. The scope of cross-examination of character witnesses, within broad limits, rests in the trial court's discretion. This entire subject is covered by the recent opinion of the Supreme Court in Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213. See, also, Mannix v. United States, 4 Cir., 140 F.2d 250, 251–253.

The defendant also complains of certain remarks made by government counsel in argument to the jury. The Assistant United States Attorney, in the midst of his opening argument, in referring to a $17,500 settlement made by the defendant shortly before Mr. Sizer's death, the proceeds of which were not deposited in the bank, said: "I have an analysis here and I am going to tell you where the cash went. I am going to show you that the defendant was cheating his dying partner." The District Court sustained an objection to that statement and instructed the jury to

disregard it. The statement of counsel should not have been made. The defendant was not charged with cheating his partner, but with having deliberately attempted to cheat the United States. The prompt action of the District Court prevented the improper argument from ripening into prejudicial error. Dunlop v. United States, 165 U.S. 486, 498, 17 S.Ct. 375, 41 L.Ed. 799; Sawyer v. United States, 202 U.S. 150, 167–168, 26 S.Ct. 575, 50 L.Ed. 972, 6 Ann.Cas. 269; United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 239–243, 60 S.Ct. 811, 84 L. Ed. 1129; United States v. Johnson, 3 Cir., 129 F.2d 954, 962, 144 A.L.R. 182, affirmed Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704.

The defendant also complains about the following statement made by the United States Attorney to the jury in his reply to the argument of defendant's counsel: "* * * I will undertake to say to you now that there wasn't a soldier in our armed forces, a sailor or a marine, that bared his breast to the enemy to protect such men as Myres, to protect our jury system, but what paid more money than William J. B. Myres did."

This statement was objected to, and the objection overruled. The defendant argues that the remark was an appeal to passion and prejudice. It was specifically directed at the $6.51 tax paid by the defendant for 1942. We think that the statement was relatively innocuous, but, if it were to be regarded as an improper attempt to arouse the jury's passions and prejudices, we are satisfied that it would not justify a retrial of the case. See United States v. Socony-Vacuum Oil Co., Inc., supra, pages 239–243 of 310 U.S. pages 851–853 of 60 S.Ct. Moreover it compares favorably with some of the remarks made by defendant's counsel in their closing arguments, such as:

"I don't know what we can say to our Government when, where there is an honest difference of opinion as to whether we owe any taxes or not, I don't know what we can say to the prosecutor who gets out his big prosecution bludgeon and says, 'Give in, give in, or you are indicted.' We have not given in, and we won't give in,

we will have another day, no matter what the outcome of this law suit is."

"* * * Bring in a verdict of acquittal on all four counts, and send Bill Myres home with a happy birthday present, because tomorrow is his birthday."

This Court has said that it will not reverse for improper remarks, in closing arguments, invited or provoked by opposing counsel. Chicago & N. W. R. Co. v. Kelly, 8 Cir., 84 F.2d 569, 573.

There is another remark of the United States Attorney to which defendant calls attention. The remark was not objected to at the trial, and will therefore not be considered.

On the whole, we think there is very little basis for serious criticism of the arguments of counsel for either side.

Our examination of the record has convinced us that nothing that occurred at the trial entitles the defendant to a reversal.

The judgment appealed from is affirmed.