## OLSON v. UNITED STATES.

No. 14260.

United States Court of Appeals
Eighth Circuit.

Oct. 22, 1951.

986

Francis Murphy, Fargo, N. D., for appellant.

P. W. Lanier, U. S. Atty., Fargo, N. D. (Joseph A. Struett, Atty., Chief Counsel's Office, Bureau of Internal Revenue, Chicago, Ill., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

Wanlo R. Olson was convicted on three counts of an indictment which charged him with attempting to defeat and evade a large part of his federal income taxes in each of the years 1944, 1945 and 1946, by filing false returns in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). In count one it was charged that he returned net income for 1944 in the sum of $3,864.37 and the tax thereon in the sum of $707.00, whereas his net income was $74,269.42 and the tax $47,228.40. In count two, the net income and tax charged to have been returned for 1945 were $4,906.91 and $943.00, respectively, whereas the amounts were in fact $72,963.49 and $46,289.33. In count three the charge was that the net income and tax returned for 1946 were $12,188.-87 and $2,937.18, respectively, whereas the true sums were $58,304.73 and $30,683.62. He was sentenced to three years imprisonment and a fine of $10,000 on count one, and to the same penalty on each of counts 2 and 3 "but such sentence on counts 2 and 3 to run concurrently with the sentence imposed in count 1." He appeals. His trial before the court and a jury upon his plea of not guilty extended over more than a week but he submits his appeal upon a condensed record which includes only the parts of the evidence and proceedings he has deemed sufficient to present the four points of error argued and relied on by him for reversal. The record does not include any motion for directed verdict at the conclusion of all the evidence and there is no claim that the evidence adduced at the trial was not sufficient to support the verdict and judgment.

The same counsel who represented the defendant throughout the trial in the District Court of North Dakota and the appeal to this court in the case of Hanson v. United States, 186 F.2d 61, also represented the defendant in this case on his trial and on this appeal. In the Hanson case this court considered at length the question of the sufficiency of the evidence to support the conviction for violations of the same statute here involved and there

were doubtless points of similarity in the kind of evidence in the two cases. But beyond stating that the evidence against this appellant supported the verdict of guilty returned against him by the jury, we are called on here to discuss only the particulars presented and relied on by appellant.

The four points presented and argued for reversal are: (1) that the court erred in admitting testimony as to appellant's net worth for the taxing year 1946; (2) that it erred in sustaining objection to defendant's testimony as to certain advice given him by a lawyer; (3) that it erred in denying defendant's motion to strike certain testimony; (4) that it erred in giving an instruction duly excepted to.

1. Enough of the record of the proceedings on the trial has been brought up to show that the defendant kept a set of books showing his income for the year 1946 and the government submitted the purport thereof to the jury. Further along in the trial it offered evidence of his net worth at the beginning and at the end of the year 1946. Both items of evidence (the books and the net worth) tended equally to show that the defendant had received large amounts of income during 1946 and he had made return of only a small fraction or less than ten percent of the tax that he owed in respect to it. But he objected to the evidence of net worth on the ground that it "constituted a mere substitute method in the absence of books, the government having already established that there were adequate books kept for the year."

In making his objection to the evidence of net worth offered by the government the defendant did not point out to the trial court wherein he claimed that the evidence tended to his prejudice. He merely objected generally that it was incompetent and improper. Counsel for the government replied that the tendered evidence of net worth was "entitled to its place in the record as additional evidence or corroborative evidence or evidence which should be considered by the jury under all the circumstances."

On this appeal appellant argues that the evidence "impressed the jury with the notion that appellant's books of account were unreliable" and their unreliability "tended more strongly to indicate bad faith on his part than the failure to keep any books whatsoever in 1944 and 1945."

But we find no merit in the assignment of error. As the defendant kept a set of books for 1946 the government in the first instance determined his correct income and his attempt to evade the tax on it on the basis of the books. But it rightly sought to corroborate and check its conclusion by reference to other available evidence tending to support its accusation and to show the same tax evasion. In the case of O'Connor v. United States, 9 Cir., 1949, 175 F.2d 477, a prosecution under the same statute as is here involved, the government agents employed and there were submitted to the jury three different methods of determining the income of the accused and no error was found in the resulting judgment. In Jelaza v. United States, 4 Cir., 1949, 179 F.2d 202, the opinion of the Court of Appeals shows that it approved the use of three different methods of arriving at income on the trial of a charge of violating the same statute that is here involved. Likewise, in United States v. Chapman, 7 Cir., 1948, 168 F.2d 997, the amount of income was shown by books of account and also by proof of net worth at different times as in this case.

In this case the defendant's books for 1946 tended to show the attempted tax evasion in that year as charged and the comparisons of net worth at different dates added corroboration. Though the government agents did not reach exactly the same results in figures from their studies of defendant's books and his net worth at the beginning and end of 1946, there was enough similarity to afford corroboration. Both studies tended to show his tax returns were grossly false as charged. The record brought up does not show what defense was offered to the government's showing, both by book records and by other corroborating evidence, that in the period covered by the indictment the defendant

only returned and paid a little more than 3 percent of the taxes he owed. We find no basis in the record to conjecture that the evidence complained of was otherwise than probative of the offense charged. As was said in United States v. Tandaric, 7 Cir., 152 F.2d 3, loc. cit. 6: "It is to be remembered that we must pass upon defendant's contention without regard to technical errors, defects, or exceptions which do not affect the substantial rights of parties, 28 U.S.C.A. § 391, and the question whether prejudice results from the erroneous admission of evidence is one of practical effect, when the trial as a whole and all the circumstances in the case are regarded." The first point argued affords no cause for reversal.

■ 2. As to the second point, it appears that defendant was charged with receiving an item of more than five thousand dollars in 1946 as a result of transactions with one Krick Company. Defendant had loaned one Krick $25,000 and had agreed to take a share of the company's profits in lieu of interest. The amount charged as income represents those profits. The defendant testified that he consulted with a lawyer named Taylor, since deceased, as to whether or not he had to account for the receipts on his income tax, and in response to the question, "What was his advice to you?", testified that he was advised to leave it out for the time being. The record indicates that the defendant desired and was proceeding to state his conversation about the matter with the lawyer verbatim but was interrupted by an objection made by the prosecutor to the narration by the witness of the details of the conversation. The court sustained the objection only as to the narration of such details of conversation, allowing the testimony as to the advice given by the lawyer to stand. There was no offer to prove made on behalf of defendant and the record indicates that defendant's counsel asked the court, "You are not striking out this last sentence?", referring to the advice given by the lawyer, to which the court replied, "It is not being stricken". Defendant's counsel seemed content with the court's answer and pressed the matter

no further. In its instruction the court specifically called the attention of the jury to defendant's testimony that "he was advised that he did not have to report the income from a certain $25,000 loan" and it is clear that the defendant's rights in respect to the $5,559.59 item of income in 1946 were fully protected. The part of the record that has been brought up in relation to it presents no error.

3. As to the refusal of the court to strike out testimony.

It appears that defendant disclosed in answers to questions put to him on cross-examination that he had a bank account in California. He said, "Right here I can't say the date when I first opened an account in this California bank. I can't say for sure that the account was opened in 1945". The defendant moved to strike all testimony as to the deposits in the California bank on the ground that they were made in 1947 [after the dates of the offenses charged.] The motion was denied. Later further evidence was adduced and it was shown that the bank deposits in California were made in 1947 and were therefore not relevant. A motion was then made to strike all the testimony with reference thereto, and it was sustained. In striking it out the court admonished the jury to "just disregard it as though it had never been offered."

■ We find no merit in the contention that the judgment ought to be reversed because the court denied the motion to strike the testimony about the deposits in the California bank in the first place and before the defendant had identified the dates of them as being subsequent to 1947. The court's ruling and admonition fully protected defendant's rights so far as is shown by anything in the record before us.

■ 4. The point last argued is that the following instruction given by the court was erroneous: "You are instructed that a taxpayer who keeps books of account or any records from which his income can be ascertained is required to produce them at reasonable times for inspection by the Government revenue agents

and that the failure or refusal of such taxpayer to produce his books and records is a circumstance which might be considered in determining the issue of wilfully filing a false return. If you find in this case that the defendant did have books of account or any other records from which his net income could be ascertained and that he failed to produce them on reasonable request by the Government revenue agents, you may give consideration thereto in determining the issue of whether or not he wilfully filed a false return or returns."

This instruction, it may be noted, conforms substantially with the declaration of law made by this court in Myres v. United States, 8 Cir., 174 F.2d 329, loc. cit. 337. There was an appeal from conviction and sentence under the same statute that is involved here, and the court stated: "The defendant argues that the court erred in instructing the jury that a taxpayer who keeps books of account or records from which his net income can be ascertained is required to produce them at reasonable times for inspection by government Revenue Agents, and that the failure or refusal of such a taxpayer to produce his books and records is a circumstance which might be considered in determining the issue of willfully filing a false return. The defendant asserts that this instruction was highly prejudicial because it implied that the defendant had books or records and that he concealed them from the Revenue Agents. It is true that the defendant had no books of account, but he did have the case files of the firm, some memoranda as to expenses, and all of the cancelled checks upon the several bank accounts. That these were helpful to his own accountants in reconstructing his income is apparent. His withholding this assistance from the Revenue Agents was entitled to significance, particularly in view of his professed willingness to help them and his failure to do so. The defendant also contends that the charge in this respect misstated the law and is contrary to the Fifth Amendment to the Constitution of the United States relative to self-incrimination. We fail to see how the defendant's privilege against self-incrimination was in any way involved in this case."

The record brought up in this case indicates that the facts in this case were similar to those in the Myres case in that the defendant here had no books of account for the years 1944 and 1945, and claimed that while he had records for 1946 he had only a few for 1945 and nothing for prior years, but he did have in his office a certain record of "daily receipts", "records of the sales", "the salaries paid", "invoices in a big drawer". His employee, Mrs. Iver Lee, whom he called to testify in his behalf, proved that defendant did have some records for the year 1944. The government agents who heard her testify took the stand in rebuttal and testified that if they had had access to the records testified to by Mrs. Lee it would have saved them one-third of the time they had to spend working out the evidence they adduced. The record brought up does not show that the instruction complained of was prejudicially erroneous.

As we have not found error in the judgment appealed from it is affirmed.