Louis C. SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15360.

United States Court of Appeals Eighth Circuit.

Aug. 16, 1956.

Writ of Certiorari Denied Nov. 13, 1956.[1]

See 77 S.Ct. 148.

Morris A. Shenker, St. Louis, Mo. (Sidney M. Glazer, Berkeley, Mo., was with him on the brief), for appellant.

Robert C. Tucker, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., and Charles H. Rehm, Asst. U. S. Atty., St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Louis C. Smith appeals to this court from a judgment of conviction entered on June 2, 1955, in the United States District Court for the Eastern District of Missouri upon a jury verdict finding him guilty under an indictment charging a violation of former 26 U.S.C.A. § 145(b) of the Internal Revenue Code of 1939. He was sentenced to imprisonment for a period of one year and one day and fined $2,000.00. The indictment charged that on February 19, 1948, the appellant did wilfully attempt to defeat and evade his income tax for the year 1947 by filing a false and fraudulent return, wherein he stated that his adjusted gross income for 1947 was the sum of $3,690.04 and that his income tax was $343.00, whereas his adjusted gross income was the sum of $39,984.49 and his tax was $17,759.58.

The appellant's income tax return for the year in question showed wages from an employer, the Plaza Amusement Company, as $1,300.00 and other income as $2,390.04. The other income allegedly consisted of $2,000.00 from miscellaneous gambling, income from the Plaza Amusement Company partnership $211.15, and income from rents and royalties $178.89, wherefrom appellant claimed he owed a tax of only $343.00.

The government attempted to prove its case by the increase in net worth method. Accordingly it had to establish a base or starting point from which increases or decreases of net worth in following periods could be properly figured. This particular case presented unusual difficulty. The appellant had kept no books, records, bank accounts or any of the ordinary media whereby one's financial operations may be traced. Appellant was uncooperative with the revenue agents. When asked the source of his funds, he told one agent they came from an old mail bag and, "Let's just say I dug up an old iron pot." Reference to an old mail bag and buried money may not have been entirely facetious. In 1924 appellant had been convicted and sentenced in the District Court for the Eastern District of Missouri and the Southern District of Illinois to concurrent sentences for receiving, concealing and aiding in concealing and receiving stolen mail and for possession of stolen mail. As a result of those sentences, he was confined in the Federal Penitentiary at Leavenworth, Kansas, until sometime in 1941.

The records indicate that the appellant filed no income tax returns for 1932 to 1941, inclusive. His tax returns for 1942 and 1943 had been destroyed by the government. Certificates of assess-

ment and payments covering appellant's tax accounts for the years 1932 through 1948 were introduced into evidence over objection. Tax returns for the years beginning with 1944 were offered and received.

Appellant did not testify and he offered no witnesses in his behalf.

Numerous points have been raised by the appellant in this court. They will be discussed individually as they appear in appellant's brief.

■ Appellant's first point is that: "The Court erred in not allowing defendant to cross-examine Revenue Agent Robert Bell as to his investigation of the Plaza Amusement Company and as to statements made relative to the Plaza Amusement Company and in refusing to strike his testimony because of the undue limitation to his cross-examination."

During the cross examination of Bell by counsel for the appellant, the witness was asked if he wasn't really investigating Plaza Amusement Company to determine whether stock was actually held in the names of straw parties. There was no testimony on direct that the witness had conducted such an investigation of Plaza Amusement Company or that stock listed was in the name of straw parties. The question for determination at that point in the trial was whether or not the appellant owned 166 shares of stock in the Plaza Amusement Company and the court limited the examination to that issue and matters directly bearing thereon. To sustain his contention, appellant relies upon two cases wherein the Government was attempting to suppress confidential reports: United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503; United States v. Beekman, 2 Cir., 1946, 155 F.2d 580. No such motive for restriction of cross examination was here present. The trial court was merely exercising its discretion to keep the scope of examination within reasonable bounds.

Appellant's second point is that:

"The Court erred in admitting into evidence Government Exhibit 35 (net worth statement), in admitting into evidence conclusions of witness Robert Bell and in overruling defendant's objections to the hypothetical question asked witness Robert Bell relative to defendant's tax and income."

■ While conceding the propriety of admitting a revenue agent's summary of his testimony, United States v. Johnson, 1943, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546, appellant claims that the summary herein did not find support in the evidence. Exhibit No. 35 is the usual summary, customary in net worth cases, which sets forth in compact form the evidence produced by the government tending, in this case, to establish the appellant's net worth on December 31, 1946, as $11,224.17 and his net worth on December 31, 1947, as $34,-195.54, an increase during the indictment year of $22,971.37. Adding to this his estimated living expenses and gifts of $4,565.01 and taking into account reserve for depreciation and a non-taxable pension of $248.04, left a total to be accounted for of $27,536.38. Balancing this against his 1947 return left, according to the government figures, an unreported income of $23,597.94 for the indictment year. Each item of asset or liability is based on testimony of government agents admissible for the jury's consideration. The accumulation may not be figure perfect; it might be suspect if it were. It was the government agent's best estimate of the appellant's financial growth during the year in question.

One of the principal objections to Exhibit 35 was that it did not include an alleged liability of $12,000.00, representing a claimed loan in 1947 to the appellant from one Frank Wortman. The information with reference to the claimed loan appeared in this fashion: Edward Wortman was called as a government witness. Because of his hostility,

the government was permitted to cross examine him. During the examination, Edward Wortman testified that his brother Frank had made a loan of $12,000.00 to the appellant in 1947. This was the first time the government auditors had heard of such alleged loan. They can hardly be criticized for failure to investigate it prior thereto and we see no error in failing to include it in the summary. It was the bare assertion of a hostile witness made at the trial that his brother had made a $12,000.00 loan to the appellant some years prior thereto. The jurors heard the testimony. They could believe it or not, and certainly the right to cross examine remained with counsel.

With regard to government computations such as we have in question here, the Court of Appeals for the Sixth Circuit in Gariepy v. United States, 1951, 189 F.2d 459, 462, said:

"At best it was, of course, but an estimate, but as an estimate it was entitled to the consideration of the jury because based on substantially the entire evidence in the record. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Bell v. United States, 4 Cir., 185 F.2d 302."

In numerous cases this court has approved of the use of summaries similar to Exhibit 35. See Kampmeyer v. United States, 8 Cir., 1955, 227 F.2d 313, 317, and cases cited therein. We find no error in the admission of Exhibit 35.

■■■ Appellant's main objection to the hypothetical question asked Agent Bell is on the same ground used in objecting to Exhibit 35, in that the hypothetical question did not include any reference to the $12,000.00 item as a liability of the appellant. We think, in view of all the circumstances, that the question was not improper, even though it did exclude the $12,000.00 item. As referred to heretofore, the only evidence regarding that item came from a hostile government witness who, because of his hostility, was cross examined with the court's permission. Edward Wortman testified that not he but his brother Frank had made a loan of $12,000.00 to appellant. Frank Wortman was not called and did not testify. Bell, in his summary, Exhibit 35, did not include the alleged loan as a liability of appellant. In formulating the hypothetical question, government counsel also omitted the $12,000.00 item. We think it was not error to overrule objection to the question on the grounds stated. The witness was cross examined by appellant's counsel regarding the alleged loan. The jurors heard the testimony and they could believe or disbelieve whom they wished. In any event, we think it makes little practical difference. The government's evidence and the answer to the hypothetical question tended to show an adjusted gross income of $27,287.98 and a tax liability of $10,319.91. Even if the $12,000.00 item had been established, the amount of understated taxable income was nevertheless substantial. The government is not required to show the exact amount of error. If the understated taxable income be substantial, that is sufficient because the exact amount is not the gist of the offense. Cave v. United States, 8 Cir., 1947, 159 F.2d 464, 468.

On this point, appellant cites several cases, including one from this court: Kirsch v. United States, 8 Cir., 1949, 174 F.2d 595, 600–602. In the Kirsch case, there was no evidentiary support for an essential assumed fact and, furthermore, the assumed fact was disproved by the government's own evidence. What constitutes a proper foundation to establish the truth of an assumed fact is largely up to the trial court, but in that case there was no foundation to be found. The revenue agents made no attempt to ground their assumption on adequate investigation; the hypothetical question there used contained an assumption clearly unwarranted. The hypothetical question here used is not subject to the same defect. The other cases cited by appellant are not in point.

Appellant's third claim of error is:

"The Court erred in admitting into evidence Exhibits 13, 14, 15 and 19."

■ These exhibits were used to establish that appellant claimed to have no assets while in the penitentiary. Appellant contends that the exhibits were confidential records not open to the prosecution under Section 2.14, 28 C.F.R. As to Exhibits 13, 14 and 15, appellant is clearly mistaken since Section 2.14 applies only to data gained through a parole hearing before the Board of Parole. Exhibits 13, 14 and 15 are records executed by the appellant himself and were not a part of an oral parole hearing provided for in Section 2.14. Exhibit 19 consists of an interview before the Board of Parole and may be classified as confidential under the regulations. If, however, it was error to admit Exhibit 19, we think it was not prejudicial. Exhibits 13, 14 and 15, standing alone, were sufficient evidence of net worth to establish a starting point. Exhibit 19 was not an essential document upon which the government's case stands or falls. Exhibits 14 and 15 and, to a lesser extent, Exhibit 13 establish the same thing that Exhibit 19 helped establish— that the appellant had no substantial assets during a certain period. The cumulative effect of the exhibits was to partially corroborate the government's opening net worth estimate. We accordingly hold that the admission of Exhibit 19 was not unduly prejudicial to the appellant so as to constitute reversible error.

■ Appellant further argues that these exhibits were inadmissible because uncorroborated. Smith v. United States, 1954, 348 U.S. 147, 155, 75 S.Ct. 194, 99 L.Ed. 192, clearly holds that the corroboration requirement applies to admissions, at least where the admission is made *after* the fact and the statement embraces an element vital to the government's case. On admissions *prior* to the crime, it was earlier decided that such admissions need no corroboration. Warszower v. United States, 1940, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876:

"The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone. Where the inconsistent statement was made prior to the crime this danger does not exist. Therefore we are of the view that such admissions do not need to be corroborated. They contain none of the inherent weaknesses of confessions or admissions after the fact. Cases in the circuits are cited by petitioner to the contrary. In Gulotta v. United States,[1] the decision turned on the similarity of confessions and admissions rather than upon any differences between admissions before and after the fact. In Duncan v. United States [9 Cir., 68 F.2d 136] and in Gordnier v. United States [9 Cir., 261 F. 910] the conclusion was reached without any comment upon this difference. Our consideration of the effect of admissions prior to the crime leads us to the other conclusion [citing Miles v. United States, 103 U.S. 304, 26 L.Ed. 481]."

In addition thereto, appellant's tax returns subsequent to his release from prison and prior to the indictment sufficiently corroborate the exhibits in question. Smith v. United States, supra, 348 U.S. at pages 157 and 158, 75 S.Ct. at pages 199, 200.

Point No. 4 is:

"The Court erred in admitting into evidence Exhibits 21A to 21W, identified as work papers of George Frank."

■ George Frank was the accountant for the Plaza Amusement Company. These records were prepared by him in the ordinary course of business and contemporaneously with the issuance of stock to the stockholders of Plaza Amuse-

---

1. 118 F.2d 683, a case from this circuit and relied upon by the appellant as support for his contention.

ment Company. In support of his contention, appellant cites the case of Hayes v. United States, 10 Cir., 1955, 227 F.2d 540, 544. That case is not comparable. The exhibit offered in the Hayes case was prepared by a tax expert long after the events it was attempting to portray and in preparation for trial. It was properly denied admission. The admissibility of records and entries made in the regular course of business is today unquestioned. United States v. Mortimer, 2 Cir., 1941, 118 F.2d 266, certiorari denied 314 U.S. 616, 62 S.Ct. 58, 86 L.Ed. 496. This is especially true in United States courts. 28 U.S.C.A. § 1732. Of course, other circumstances, such as "lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility".

Appellant's fifth point is:

"The Court erred in overruling defendant's motion for a mistrial after Government counsel asked witness Edward Wortman if his brother Frank Wortman had been convicted of a crime and sentenced to 10 years."

Edward Wortman, the president of the Plaza Amusement Company, had testified in behalf of the government. The government was allowed to interrogate him as a hostile witness. A number of questions were directed to him concerning his brother Frank Wortman. The witness testified that his brother had been sentenced to jail by Judge Moore for refusing to tell a grand jury where he lived. He was then asked the following question:

"Q. For further purpose of identification, sir, I will ask you if this is the same Frank Buster Wortman who was sentenced in 1934 to 10 years on a charge of resisting a United States Officer?"

Objection to the question was promptly sustained but appellant's motion for a mistrial was overruled. Appellant claims that the statement or question of government counsel was of such an exception-

ally prejudicial character that no statement by the court could remove the harmful effect caused by it. Of course, the question should not have been asked and it having been asked would have justified an instruction to the jury to disregard the question. We think, however, that failure to grant a mistrial was not reversible error. See and compare: Dolan v. United States, 8 Cir., 1955, 218 F.2d 454, 460; Davis v. United States, 8 Cir., 1956, 229 F.2d 181, 186–187. In the first place, the improper question referred to a brother of the witness, not to the appellant himself. Only by resort to a circuitous type of reasoning could it be conceived that testimony regarding the prior conviction of a witness' brother was tantamount to a hostile reflection upon the character of appellant. Secondly, the trial judge was in a far better position to determine whether prejudice had resulted than are we. He saw the jurors, the witnesses and the appellant, and it very apparently was his considered judgment that the improper question about a witness' brother had not prejudiced the appellant. We will not disturb his conclusion.

The sixth point raised on appeal is that:

"The Court erred in overruling appellant's motion for judgment of acquittal at the close of the entire case."

Appellant herein attacks the sufficiency of the evidence to justify conviction and claims that the government failed to establish with reasonable certainty an opening net worth to serve as a starting point on which to calculate any increases in the appellant's assets. The government's theory was that Exhibits 13, 14, 15 and 19, plus certificates of assessment and payments beginning with the year 1932 and his tax returns for the years 1944, 1945 and 1946 established that the appellant had no assets of any substantial consequences prior to December 31, 1946, at which time it was claimed that his net worth totalled $11,-224.17. The establishment of a net worth starting point cannot be done with

mathematical certainty and each case presents its own peculiar difficulties. The appellant was asked by the government investigators during their investigation of the case if he would give them a net worth statement. This he refused. He was then asked for his records and he replied that he did not keep records. He was asked if he had any bank accounts, brokerage accounts, safety deposit boxes or if he owned any property. He replied in the negative. He was then asked for the source of his funds and he stated that they came from an old mail bag and later in the conversation added, "Let's just say I dug up an old iron pot." He further stated to the investigators that he did not have income except from salary and that he was of the opinion that he did not have to keep records in those circumstances.

Under Holland v. United States, 1954, 348 U.S. 121, 138, 75 S.Ct. 127, 137, 99 L.Ed. 150, the government may not "disregard explanations of the defendant reasonably susceptible of being checked". Appellant complains here that:

"No effort was made to check defendant's statement that his funds came from an old mail bag. Such a statement should have been checked in view of the nature of defendant's conviction for mail robbery as well as his statement to the Parole Board that he had received $3000.00 from the robbery."

Old mail bags and old iron pots are hardly the explanations "reasonably susceptible of being checked" referred to by the Supreme Court in the Holland case. We think, from a complete review of the evidence, that there was sufficient justification for the jury's conclusion that on December 31, 1946, the appellant's net worth was approximately $11,224.17 and that his net worth on December 31, 1947, was approximately $34,195.54. These figures were based on the agent's testimony and the records introduced, which were sufficiently authenticated to justify their presentation to the jury and sufficient to justify a denial of appellant's motion for judgment of acquittal.

Appellant's seventh point is that:

"The Court erred in not instructing the jury as requested as to a lesser offense under Section 145(a) (sic) of the Internal Revenue Code, and as to a lesser offense under Section 3616(a) of the Internal Revenue Code [26 U.S.C.A. § 3616(a)]."

Since preparation of appellant's brief, the Supreme Court affirmed this court in Berra v. United States, 221 F.2d 590, 351 U.S. 131, at page 135, 76 S.Ct. 685, at page 688, and held:

"The only question before us is whether the jury should have been allowed to decide whether it would apply § 3616(a) rather than § 145 (b), and that we hold was not for the jury. It was, therefore, not error to refuse the requested instruction."

Appellant's eighth point is that:

"The Court erred in instructing the jury that it makes no difference whether income was lawfully or unlawfully received and that they could find an intent to commit the crime charged even though it is coupled with an intent to suppress information as to acts which are criminal in other ways."

The giving of the challenged instruction is supported by the appellant's admission in his income tax returns that he had some income as a gambler and by his further statement that the source of his income might be from a mail bag or an old iron pot. Injection into the instructions of the possibility of the money being gained from illegal sources was fully supportable from the evidence. Certainly, otherwise relevant evidence does not become incompetent because it incidentally proves commission of independent offenses. Hardy v. United States, 8 Cir., 1952, 199 F.2d 704; Bram v. United States, 8 Cir., 1955, 226 F.2d 858. The exclusionary rule that prior offenses are not admissible against a defendant is not one of unbending rigidity. Thus, the

rule will not be given application where the evidence is used to establish some material aspect of the prosecution's case. With equal vigor it is true that the rule may be disregarded in the court's instructions under proper circumstances. We have reviewed the court's entire charge and do not find it unfair to appellant.

■ Appellant's ninth point of error is that:

"The Court erred in instructing the jury that in arriving at their verdict they might consider the failure of defendant to supply information to the revenue agents."

The court herein instructed the jury:

"Any failure on the part of the defendant to supply any information for the purpose of the computation, assessment, or collection of his income tax, which you find to be unjustified or inexcusable, is a circumstance which may be considered in your determination of his guilt or innocence."

The court further instructed the jury that if relevant leads were not furnished to the agents, the government was not required to

" * * * negate every conceivable source of nontaxable funds, and if the defendant failed to supply information to the agents in that regard, you may take such failure into account."

This court, in Myres v. United States, 8 Cir., 1945, 174 F.2d 329, certiorari denied 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520, and Olson v. United States, 8 Cir., 1951, 191 F.2d 985, approved similar instructions. Appellant would distinguish the instant case on the theory that in the Myres and Olson cases the taxpayers were not advised that they were not compelled to furnish information. Here the appellant, in response to his question to the agent as to whether or not he was compelled to give a net worth statement, was told that he did not have to. The appellant then said that he would not give a net worth state-

ment and further stated that he did not have records. In dealing with a similar instruction, the Court of Appeals for the Fourth Circuit, in Beard v. United States, 1955, 222 F.2d 84, 93, certiorari denied 350 U.S. 846, 76 S.Ct. 48, stated:

"Moreover, the instruction related to the duty imposed by the taxing statutes upon the defendant to keep records of his transactions so that the extent of his liability to income tax might be ascertained; and therefore the case falls within the rule laid down in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, which reviewed a conviction of violating the regulations under the Emergency Price Control Act and held that it was proper for the jury, in determining the issue of the defendant's guilt, to consider the business records of the defendant produced by him under a subpoena issued by authority of the statute. It was held that all records which Congress in the exercise of its constitutional powers may require individuals to keep in the conduct of their affairs relating to the public interest become public records in the sense that they fall outside the constitutional protection of the Fifth Amendment."

In the instant case, the appellant under the law was required to keep records. He stated that he did not do so. The fact that he did not keep records or the fact that he did keep records and refused to disclose them was a proper subject for comment by the court and we find no error in the instruction given.

■ Appellant's tenth point is that:

"The Court erred in overruling defendant's motion to dismiss the indictment based on the failure to present competent evidence before the Grand Jury, and the Court erred in not allowing defendant to ask every witness at the trial whether or not he testified before the Grand Jury in connection with this case."

During the pendency of this appeal, the Supreme Court, in Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, determined this issue adversely to appellant's contention. After a review of the historical basis for grand jury proceedings, the Supreme Court ruled affirmatively on the question of whether or not a conviction could be sustained where only hearsay evidence was presented to the grand jury. The Fifth Amendment requires nothing more than that the grand jury be legally constituted and unbiased.

■■■ Appellant's eleventh point is that:

"The Court erred in overruling defendant's motion to dismiss the indictment on the ground that the indictment was barred by the statute of limitations."

It is the appellant's contention that:

" * * * the indictment charged an offense under Section 3616(a), and that the general criminal statute of limitations, 18 U.S.C. § 3281, then three years, was applicable."

This issue is, then, dependent upon whether or not Section 3616(a) is applicable to income tax offenses. In Dillon v. United States, 8 Cir., 1955, 218 F.2d 97,[2] and Berra v. United States, 8 Cir., 1955, 221 F.2d 590, this court held that Section 3616(a) was inapplicable to income tax cases. In affirming this court in the Berra case, 351 U.S. 131, 76 S.Ct. 685, the Supreme Court did not pass upon that issue but limited its decision to the narrow question of whether the jury should have been allowed to decide whether it would apply Section 3616(a) rather than Section 145(b), and stated that that was not for a jury's determination. On the basis, then, of our decisions in the Dillon and Berra cases, we determine this issue against the appellant.

Appellant's twelfth point is that:

"The Court erred in overruling defendant's motion for a mistrial because of a newspaper article concerning the case and did not properly interrogate the jurors relative to the prejudicial newspaper article."

On the first day of trial, at the conclusion of the opening statement, the court gave instructions to the jurors with reference to their duties and responsibilities. They were told not to read newspaper articles as they might tend to confuse them. The court stated:

"If anything appears in the newspapers from now on during the trial of this case the Court will direct you not to read the article, and I hope that you will be responsive to that direction and will not attempt to read it. If you read articles printed in the newspaper you will very frequently find that they are not correct, and they do not get every side. It is evidence of the poorest type."

■■■ On the following day counsel for the appellant offered in evidence a newspaper article which he claimed was " * * * so colored as to unduly bias and prejudice the jury, and it appeared in the St. Louis Globe Democrat, the only morning paper, appeared in the evening issue of last night as well as this morning's issue." Appellant thereupon moved for a mistrial because of the article. The court stated:

"The Court directed the jury not to read any newspaper articles that might appear, and if any did appear the Court will assume the jurors observed the direction of the Court. The motion is overruled."

Subsequently counsel for appellant asked the court:

"May I ask the Court to inquire of the jury if they read this article?"

The court replied:

"Yes. I will ask them, if any juror violated the instructions of the Court and read the article, if they did, hold up your hands."

2. Certiorari granted 349 U.S. 914, 75 S.Ct. 603, 99 L.Ed. 1248, later dismissed 350 U.S. 906, 76 S.Ct. 191.

No hands were raised. We think the matter came clearly within the discretion of the trial court. In addition, it does not appear that any of the jurors saw or read the article complained of. No abuse of discretion is shown where the trial court, under such circumstances, denies the motion for mistrial.

Affirmed.