Joseph W. JANKO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16330.

United States Court of Appeals Eighth Circuit.

July 13, 1960.

Rehearing Denied Aug. 16, 1960.

**158**

Norman S. London and Sidney M. Glazer, St. Louis, Mo., for appellant.

John A. Newton and Frederick H. Mayer, Assts. U. S. Atty., St. Louis, Mo., William H. Webster, U. S. Atty., St. Louis, Mo., on the brief, for appellee.

Before SANBORN, MATTHES and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

The defendant-appellant, Joseph W. Janko, was found guilty by a jury on each of 3 counts of an indictment charging him with violations of § 7201 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 7201.[1] The first count charged the defendant with a willful and knowing attempt to evade and defeat a large part of his federal income tax for the calendar year 1954. The second and third counts contained similar charges with respect to his federal income taxes for the calendar years 1955 and 1956, respectively. The court imposed sentences of imprisonment for a total of 10 years, viz., 4 years on the First Count, 3 years on the Second Count, and 3 years on the Third Count, the terms to run consecutively.

This was the defendant's second trial before the same judge on the charges under this indictment. The first trial also had ended in conviction upon all 3 counts but a motion for a new trial was granted; this was based upon the fact that 4 members of the first jury, in spite of repeated admonitions from the court, had either read or been advised prior to the verdict of prejudicial newspaper articles about the trial. Cf. Marshall v. United States, 1959, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250.

The alleged crimes here do not consist, as is usually the case, of willful understatements of gross income, but are bottomed, instead, on willful and knowing attempts by the defendant to evade and defeat his income tax for each of the 3 years by improperly asserting his own two minor children as dependents and claiming exemptions for them. The tax amounts involved are small: $134.00 for 1954, and $264.00 for each of the years 1955 and 1956. The defendant claimed in argument that this is the first case where fraud is asserted with respect to exemptions taken for a taxpayer's own existent minor children.

Much of the factual material is not disputed: The defendant's wife, Anna, ob-

---

1. "§ 7201. Attempt to evade or defeat tax. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

tained a default decree of divorce from him in the Circuit Court, City of St. Louis, on January 26, 1954. By that decree she was granted custody of their two minor children, the defendant was given two-hour Sunday visitation rights, and she was allowed alimony of $1 per year and support and maintenance for each of the minor children of $10 per week. During the 3 taxable years the children made their home with their mother and not with their father. The mother and the children resided with her father in his house in St. Louis; her father died in April 1955 but she and the children continued to live in that house for the rest of 1955 and all of 1956. She did no remunerative work outside the home during the 3 years until November 18, 1956, when she accepted employment at a hospital. For 1954 and again for 1956 the defendant used the "small" and simple Form 1040A for his federal income tax return. He used the standard or "large" Form 1040 for his 1955 return. On his 1954 return he designated himself as single; on it he showed wages of $1,420 and tax withheld of $177.90 and asserted the usual personal exemption for himself. Under Item 14 of that return, entitled "Exemptions for your children and other dependents", he listed the 2 children and asserted them as exemptions. The form, however, did not, as was the case with non-children dependents, require a taxpayer to state whether each child had gross income of $600 or more, the amount spent for the child's support, and the amount spent by others, and the defendant set forth no such information. The form he used for 1954 contained no computation of tax. The $177.90 withheld was routinely refunded to the defendant in April 1955. On the 1956 small form return the defendant asserted that his wages aggregated $4,483.13, that his income taxes withheld totalled $602.70, that his proper tax (from the table) was $450 and that there was an overpayment of $152.70. Under Item 15, entitled "Exemptions for your children and other dependents" the defendant again listed the 2 children, gave their address as

different from his own, and asserted 3 exemptions, one for himself and one for each of the children. The claimed overpayment of $152.70 was routinely refunded to the defendant in March 1957. The defendant's long form for 1955 was prepared by W. J. Stailey Co. of East St. Louis, Illinois. It required a taxpayer to "list names of your children who qualify as dependents." Here again the defendant named the 2 children and asserted exemptions for them together with his own. This return showed wages of $3,160, tax withheld of $398.80, other income of $1,800, and a total tax (from the table) of $549. The $150.20 excess over the withholding was paid prior to the due date. All 3 returns were duly filed and were filed on time.

There is other evidence, too. Special Agent Carl Heinz testified that in a conference he had with the defendant in September 1957, at the Internal Revenue office in East St. Louis, the defendant acknowledged the 3 returns in question. He also testified:

"Q. Mr. Heinz, did you have occasion to question the defendant at that time in regard to the exemptions on these returns? A. Yes, I did.

"Q. Taking the 1954 return first, do you recall your conversation with the defendant? A. Yes, I do.

"Q. Can you tell us what that was? A. I asked him in a general way whether he understood what was necessary to claim an exemption in a return and he said he did. I asked him whether he understood— whether he contributed more than fifty per cent toward each defendant's support and he said yes, he understood that.

"Q. He understood that was what the exemption required? A. Yes, sir.

"Q. All right. Now did the defendant tell you how much he was contributing in the year 1954, toward the support of these two dependents listed? A. Yes, sir.

"Q. What did he say he was contributing? A. He said he averaged twenty dollars a week toward the support of the two children.

"Q. Twenty dollars a week in 1954? A. Yes, sir.

"Q. Did you inquire as to the later two years, 1955 and 1956? A. Yes, sir.

"Q. What did he say in regard to that? A. The same thing, that he contributed twenty dollars toward the support of the two children in those years.

"Q. Did you inquire further as to the basis of making that statement that he was contributing twenty dollars a week? A. Yes.

"Q. Could you tell us your conversation in that regard? A. Well, I asked him how he contributed it, and he said he contributed it in currency, he had no record of the contributions because it was currency. * * * "

Mrs. Janko, known as Mrs. Taylor after September 20, 1958, testified under subpoena that while her father lived he provided the housing and, with it and with his $152 monthly civil service pension, he supported the children in 1954 and until his death; that under her father's will she received the house; that, in substance, she contributed the major portion of the children's support in 1955 and 1956 in providing the house and the upstairs rentals; that the defendant contributed for the children's support between $50 and $60 a year plus about 5 pairs of shoes a year and a coat or two; that these monetary contributions were cash in varying amounts from $5 to $20 given on irregular occasions and usually handed to the son; that in 1954 they received about $300 from the second floor rentals; that these rentals in 1955 amounted to $100 a month when the second floor was rented; that there were weeks when the place was vacant or the tenants did not pay; that there were also rentals in 1956; that in 1955 she spent about $65 a month for food, two-thirds of which was for the children, and about $150 to $200 a year for clothing for the children and made other expenditures for gas, electricity and water; and that the 1956 expenditures on her part were much the same. She did not keep formal records of the payments the defendant made. The defendant's present wife Rosalie, whom he married in January, 1957, testified that during 1956 she drove with the defendant to Mrs. Taylor's home and, while she herself did not enter the house, saw the defendant give $20 in cash to his son on about 10 occasions. She had not known the defendant in 1954 and 1955 and thus had nothing to offer by way of evidence as to his payments in those years.

The defendant did not testify. Neither did his son Joseph. The boy was 11 years of age at the time of the trial and thus was between 6 and 8 during the years in question when the defendant's cash payments to him are said to have been made.

The case which confronts us, therefore, is one involving a small amount of tax dollars, is one which concerns no element of concealment or omission of gross income, is one which involves only a taxpayer's claim of exemptions for his own minor children whose existence is not questioned, but is one resulting, nevertheless, in a total of 10 years' incarceration for the defendant.

The defense's allegations of error are: error in denying a pretrial motion to dismiss; error in denying a motion for judgment of acquittal at the close of the entire case; error in respect to instructions; prejudice arising out of newspaper articles concerning the case; and error in the sentences. We consider these in order.

1. *Pretrial Motion to Dismiss the Indictment.* The defendant's argument here centers on the charge in each count.[2] He points out that there is no question of incorrectness in the stated

---

2. The counts are identical except for the year stated and the figures employed and read, "That * * * (the defendant) did wilfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him * * *

adjusted gross income and claims that the indictment does not assert that the defendant knew that the tax due was greater than the tax reported. We hold that the indictment fully withstands this attack. Its charge of willfulness goes not to adjusted gross income but to purposeful understatement of tax. The charge embraces more than a mere erroneous tax calculation unsupported by specific allegations of falsity or fraud, as was the situation in United States v. Demos, D.C.S.D.Fla., 291 F. 104, cited by the defendant, for it goes directly to the validity of the claimed exemptions.

2. *The Motion for Acquittal.* The usual motion for acquittal as to each count was made at the close of the case and was denied.

■■■ We feel that there was a failure of proof under the First Count of the indictment and that, therefore, the defendant's motion for acquittal should have been granted with respect to that count.[3] The count relates to the defendant's 1954 return "wherein he stated * * * that the amount of tax due and owing thereon was the sum of zero dollars" upon his adjusted gross income. But the evidence conclusively shows that while the small form return used by the defendant for that year did name the children and claim exemptions for them, it contained, in contradistinction to the 1955 and 1956 returns, no computation or determination of tax and no statement that his tax was zero dollars. This omission was proper, and in fact was called

for by that form; the computation then was for the District Director to make. § 6014(a) of the 1954 Code, 26 U.S.C.A. § 6014(a); § 1.6014–1 of the Regulations under the 1954 Code. Whether the proof adduced would have sustained a count directed specifically to the exemptions claimed is another question and is not now before us.

The position of the defense in support of the motion for acquittal on the other counts appears to be that (a) the tax forms which the government supplied and which the defendant used were misleading and invited mistake; (b) the assertion of the children as dependents was no more than a "claim" which the tax authorities were free to allow or disallow just as they would handle any routine claim for refund and was far from being a willful attempt to evade tax within the meaning of § 7201; (c) the defendant had no knowledge of the extent of the contributions for the children's support from his former wife, her father, or anyone else, and no practicable means of acquiring that information; (d) there was a failure of proof in that the evidence as to the source of the children's support is vague and is without reference to specific amounts; (e) the defendant's statement to Agent Heinz that he understood what was necessary to claim dependency exemptions was made only in September 1957, after the returns had been filed, and was without corroboration or any showing as to when the defendant had acquired this information; (f) will-

---

by filing * * * a false and fraudulent income tax return wherein he stated that his adjusted gross income for the said calendar year was the sum of * * * and that the amount of tax due and owing thereon was the sum of * * * whereas, as he then and there well knew, his adjusted gross income for the said calendar year was the sum of * * * upon which said adjusted gross income he owed to the United States of America, an income tax of * * *. In violation of Section 7201, Internal Revenue Code of 1954."

**3.** While the motion for acquittal might have been directed to this point more

specifically, we deem it sufficient and in any event we have no hesitancy in considering the issue. Rule 52(b), F.R.Cr. P. 18 U.S.C.A.; United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555; Hormel v. Helvering, 312 U. S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037, affirming Helvering v. Hormel, 8 Cir., 111 F.2d 1; Ayers v. United States, 8 Cir., 58 F.2d 607, 609; United States v. 353 Cases, 8 Cir., 247 F.2d 473, 477; See Wiborg v. United States, 163 U.S. 632, 658, 16 S.Ct. 1127, 1197, 41 L.Ed. 289, and Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135; 71 L.Ed. 345.

fulness must be independently shown; and (g) the amounts of tax involved do not satisfy the requirement of substantiality said to be imposed by Heasley v. United States, 8 Cir., 218 F.2d 86, 90; certiorari denied 350 U.S. 882, 76 S.Ct. 134, 100 L.Ed. 778.

There is little question now as to the necessary components of the offense under § 7201. In Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418, the section's immediate predecessor, § 145(b) of the 1939 Code, 26 U.S.C.A. (I.R.C.1939) § 145(b), is described as "the capstone of a system of sanctions" to ensure fulfillment of duty under the income tax law. It was said, 317 U.S. at page 499, 63 S.Ct. at page 368, to apply to the "gravest of offenses against the revenues" and to necessitate proof of "willful commission" in addition to "willful omission" or passive neglect of statutory duty.[4] Fourteen years later, in Achilli v. United States, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918, the court held that the positive act of willfully filing a false return in an attempt to defeat the tax is an affirmative act within Spies and supports the felony charge, saying, 353 U.S. at page 377, 77 S.Ct. at page 997:

"We cannot hold that the classic method of evading the income tax,

the filing of a false return, did not constitute an attempt 'in any manner to defeat or evade' that tax."

This court's cases of Cave v. United States, 159 F.2d 464, 466–467, certiorari denied 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856, and Myres v. United States, 174 F.2d 329, 334, certiorari denied 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520, both decided prior to Achilli, were to the same effect.

■■ By his motion for acquittal at the close of the case, the defendant laid the basis for challenging the sufficiency of the evidence. Heasley v. United States, supra, at page 90 of 218 F.2d. We feel, however, that the government's proof was adequate. The testimony of the defendant's former wife, although perhaps not as specific as a court or litigants might always desire, afforded proof, and such corroboration as was necessary, as to the extent of her father's and her own contributions to the support of the children, as to the extent of the defendant's contributions, and as to the fact that his contributions were less than half of the children's support. While, of course, the defendant may not have known the exact contributions by others than himself during the years in question, he was the father of the children, should and must have had some concept

4. In commenting upon the difference between the felony section, § 145(b), and the misdemeanor section, § 145(a) (the predecessor of § 7203 of the 1954 Code, 26 U.S.C.A. § 7203), the Supreme Court said, at pages 496–499 of 317 U.S., at page 367 of 63 S.Ct.:

" * * * It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay. * * * Willful failure to pay the tax when due is punishable as a misdemeanor. § 145(a) * * *

"A felony may, and frequently does, include lesser offenses in combination either with each other or with other elements. We think it clear that this felony may include one or several of the other offenses against the revenue laws. But it would be unusual and we would

not readily assume that Congress by the felony defined in § 145(b) meant no more than the same derelictions it had just defined in § 145(a) as a misdemeanor. * * *

"The difference between the two offenses, it seems to us, is found in the affirmative action implied from the term 'attempt', as used in the felony subsection. * * *

"Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished 'in any manner'. * * * If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."

of the cost of a child's support, had lived in his father-in-law's house and knew the value of its shelter, and must have entertained an awareness as to whether his contributions constituted the required one-half. The reference to "substantial amount of net income tax" in the Heasley case, at page 90 of 218 F.2d, was directed to a net worth case and necessary intent. It does not support the defense's contention that because the amount of dollars involved here is small it is not "substantial." On a percentage basis the amount involved is large.

■ While the 1956 Form 1040A is perhaps not as clear in its directions as to child-dependency exemptions as it might be, it is admittedly a small form of limited space and it was clear enough, we feel, for a taxpayer of defendant's intelligence not to have been misled by it and to know what he was doing when the claimed exemptions were asserted therein. The clarity of the large form which he used for 1955 is not to be disputed.

These observations answer the defendant's arguments in support of the motion for acquittal as to 1955 and 1956 and we conclude that the trial court's denial of the motion with respect to the Second and Third Counts was proper.

3. *The Instructions.* The defense's claims here come down to:

■ (a) The refusal to give certain requested instructions (Nos. 17, 18, 19, 22, 11 and 25) and the failure "to give any theory of defense instructions." We have carefully examined the items requested and the court's entire charge (including other instructions requested by the defendant and given) and we are satisfied that the proper content of those refused is embraced, and fairly so, in the charge as given and that the theory of the defense was adequately and properly presented to the jury.

■■ (b) The instructions that the issues were whether the defendant filed income tax returns, whether he claimed the children as exemptions, whether he provided over half of their support and whether, if not, his return was false and fraudulent and he knew it to be so, etc. We find no merit in the defense's position that, because it conceded the filing of the returns and the claiming of the exemptions in its closing argument, the instructions raised issues in the case which were not made by the defense and served only to obscure. The defense further asserts that this portion of the charge did not properly allow for § 152 (c) of the 1954 Code, 26 U.S.C.A. § 152(c), under which this defendant would be entitled to the exemptions even though his support contributions were less than half and that, as a consequence, *the burden of proof as to this was shifted* to the defendant. We feel, however, that the court's careful comments about the burden of proof and his considered delineation of the components of willfulness and of intent to evade and defeat the tax fully answer this argument.

■ (c) The refusal to give lesser offense instructions as intimated by Rule 31(c) [5], F.R.Cr.P., directed to § 7203 [6] and § 7207 [7] of the 1954 Code.

---

**5.** "Rule 31(c). Conviction of Less Offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

**6.** "§ 7203. Willful failure to file return, supply information, or pay tax. Any person required under this title to pay any estimated tax or tax, or required * * * to make a return * * *, keep any records, or supply any information, who willfully fails to pay such

estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

**7.** "§ 7207. Fraudulent returns, statements, or other documents. Any person who willfully delivers or discloses to the Secretary or his delegate any list, return,

The answer to this argument, so far as § 7203 is concerned, is clear. § 7203 came into the 1954 Code, with minor changes of no significance here, from § 145(a) of the 1939 Code. It clearly relates to willful *failure* to pay or to file a return, etc. Mere failure, without more, is different and of less magnitude than the willful attempt "to evade or defeat" concept of § 7201. Spies v. United States, supra. The same argument now advanced by the defense as to § 7203, was presented as to § 145(a) in Dillon v. United States, 8 Cir., 218 F.2d 97, certiorari granted 349 U.S. 914, 75 S.Ct. 603, 99 L.Ed. 1248, and dismissed 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796. This court there said, in words peculiarly appropriate here, at page 101 of 218 F.2d:

"The indictment did not charge, nor did the evidence show, that the defendant merely failed to pay a tax or failed to make a return. On the contrary, the evidence showed that a return was filed and a tax was paid. No evidence was offered that defendant failed to file a return or to show

the willful failure to pay the tax when due, except insofar as willfulness was involved in the charged willful and felonious attempt to evade the payment of taxes owed. Hence the universal rule that it is not error to fail to instruct on an offense not presented by the evidence applies. There consequently was no error in failing to instruct that defendant might have been convicted of either of the misdemeanors defined by § 145(a), of willful failure to pay a tax when due or willful failure to file a return." [8]

We hold the same result follows here with respect to § 7203 of the 1954 Code.

§ 7207 presents a much more complex problem,[9] and its resolution is affected by the Spies, Achilli and Dillon cases, supra, and by Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013.[10]

§ 7207's antecedent in the 1939 Code is § 3616(a).[11] That section traces its origin to the Act of 1798, 1 Stat. 580, 586, which, of course, was adopted long

account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000 or imprisoned not more than 1 year, or both."

8. United States v. McCue, D.C.D.Conn., 160 F.Supp. 595 does not appear to be to the contrary. See the distinction drawn with the Dillon case on page 601.

9. We could avoid this consideration of § 7207 because the instruction tendered to the trial court was directed, apparently by inadvertence, to the language of § 3616(a) rather than to § 7207, but we shall not decide this issue on that technical ground.

10. In brief, Spies holds that § 145(a) of the 1939 Code (§ 7203's predecessor) applies only to willful failure to pay a tax or to file a return, etc.; that § 145(b) (§ 7201's predecessor) demands, for conviction thereunder, something more than such willful *failure;* that a jury could find that other factors, together with willful failure to file and to pay, could support an inference of willful attempt to evade or defeat tax under § 145(b); and that the defendant there was entitled to a charge pointing out the necessity for such an inference beyond what was nec-

essary to make out the misdemeanors. Berra holds that, assuming that § 3616 (a) of the 1939 Code is applicable to income tax returns (this assumption being proper there because the parties so agreed), the facts necessary to prove a willful attempt to evade taxes by filing a false return under § 145(b) were identical with those required to prove the delivery of a false return with intent to evade taxes under § 3616(a); that the two sections covered precisely the same ground; that, this being so, it was not for the jury to decide which section was to be applied; and that a lesser offense instruction was not in order. Achilli holds flatly that § 3616(a) was not applicable to evasion of the income tax.

11. "§ 3616. Whenever any person—(a) Delivers or discloses to the collector or deputy any false or fraudulent list, return, account, or statement, with intent to defeat or evade the valuation, enumeration, or assessment intended to be made; * * * he shall be fined not exceeding $1,000, or be imprisoned not exceeding one year, or both, at the discretion of the court, with costs of prosecution."

prior to any federal income tax legislation. The Supreme Court in Achilli reviewed the history of the statute, at page 376 et seq. of 353 U.S., at page 998 of 77 S.Ct., and concluded that, although it once had income tax application, by the time it had emerged as § 3616(a) in the 1939 Code "its scope had been shrunk by a series of specific enactments (the Revenue Acts adopted following the passage of the Sixteenth Amendment) that had the potency of implied repeals" and that, therefore, "§ 3616(a) did not apply to evasion of the income tax." See also Mitchell v. United States, 8 Cir., 245 F.2d 707, and Hartman v. United States, 8 Cir., 245 F.2d 349, 351, 353.

▪ Whether this same conclusion is to be reached with respect to § 7207 of the 1954 Code is our present question. This court touched upon the problem in Dillon, supra, decided January 5, 1955. That case, however, concerned a conviction under § 145(b) of the 1939 Code and the question there presented was whether the defendant was entitled to a lesser offense instruction under either § 145(a) or § 3616(a). The answer, so far as § 145(a) was concerned, is set forth above. The contention as to § 3616(a) was disposed of by the conclusion that the section was not applicable to the income tax. This ruling was followed four months later in Berra v. United States, 8 Cir., 221 F.2d 590, 598. Thus, this court in 1955 twice reached the same conclusion as did the Supreme Court in Achilli in 1957. In Dillon, in support of its conclusion as to the non-application of § 3616(a), the court re-

ferred to § 7207. It is to be acknowledged that language in the Dillon opinion,[12] by way of dictum, indicates that this court then felt that § 3616(a) and § 7207 were different and distinguishable. Dillon, however, was decided only a few months after the effective date of the 1954 Code and preceded both Berra and Achilli. The relationship of the two sections from different Codes must be reviewed, therefore, in the light of those subsequent cases.

§ 7207 differs somewhat in content from § 3616(a). § 7207 introduces the word "willfully" which was not present in § 3616(a). It incorporates the phrase "known by him to be fraudulent or to be false as to any material matter" and omits the phrase "any false or fraudulent list, return, account or statement, with intent to defeat or evade" used in § 3616(a). The positioning of the sections is also of interest. § 3616(a) was among the 1939 Code's "General Administrative Provisions", and was broad in nature, whereas § 145(b) was specific and was included in the Income Tax Chapter of that Code. In the 1954 Code, on the other hand, § 7207, as is § 7201, is a part of Chapter 75 entitled "Crimes, Other Offenses, and Forfeitures", which in turn is a part of Subtitle F, "Procedure and Administration." In the 1954 Code the income tax sections constitute Subtitle A but that Subtitle includes no sanction or penalty provisions. All of these are gathered together and comprise the aforementioned Chapter 75 which was described in the House and Senate Committee Reports on the 1954

12. This court said, at page 103 of 218 F.2d:

"Section 7207 appears in the statutory context with other offenses relating to income tax offenses. It is sufficiently broad to apply to both income tax derelictions as well as to those subjects other than income taxes with which § 3616 was in juxtaposition. The only substantive portion of § 3616 which was retained and carried forward in the 1954 revision was placed with income tax derelictions. And then the element of willfulness, absent in § 3616 but previously consistently present in offenses relating to income tax violations, was inserted * * *. We conclude that Congress did not intend by § 3616(a) that a nonwillful inaccurate and ipso facto false statement in an income tax return, frequently very complicated, should constitute a crime. It only made such a false statement a misdemeanor when, by § 7207, it required that the statement be willfully made and known to be fraudulent or false as to a material matter. § 3616 (a) not being applicable, there was no error in failing to instruct concerning it."

Code as follows: "In this chapter all criminal offenses are brought together, as are all other offenses, and all provisions relating to forfeitures, except those relating to" alcohol, tobacco and certain firearms. House Report No. 1334, p. 108, and Senate Report No. 1622, p. 147, 83rd Congress, 2d Session. Each report goes on to say, "In general, uniform penalties are provided * * * instead of the varying penalties now provided for what in substance is the same offense, namely, the attempt to evade tax." The same Committee Reports in their detailed discussions of technical provisions both recite, pp. A425 and 603, respectively, in speaking specifically of § 7207, "This section * * * contains no material change from existing law." 1954 Congressional Service 4573 and 5235.[13]

Although the question is a close one, we are now unable to detect a significant difference, which would have a bearing on Congressional intent, between § 3616(a) and § 7207 and we regard the mere gathering of the penalty sections into one general chapter as not evincing an intent on the part of Congress to give § 7207 a greater scope than § 3616 (a) had under the 1939 Code. Although the Committee Reports were formulated prior to Achilli, we are fortified in this conclusion by their positive statements, not referred to in Dillon, *that no change from existing law was effected.* It fol-

lows that § 7207 is not applicable to income tax evasion.

An additional reason for this conclusion lies in the fact that if § 7207 were to be regarded as applicable to income tax returns, then, with the insertion of the word "willfully", we would have a *downgrading,* from felony to misdemeanor, at least by way of alternative, in the willful filing of a false income tax return which, as we have noted, had been held in the Achilli, Cave and Myres cases, all supra, to constitute a felony under § 145(b) of the 1939 Code.[14] This result does not seem to square with the expressions in the Committee Reports that Chapter 75 of the 1954 Code served to bring all criminal offenses together; there is no intimation there that relaxation in definition of any crime was intended or accomplished.[15]

 But there is still another consideration. If § 7207 did operate to effect a downgrading into alternative misdemeanor status of the willful filing of a false income tax return, then, it seems to us, the reasoning employed by the Supreme Court in Berra defeats the defendant's claim. To paraphrase the language of Berra, at page 134 of 351 U.S., at page 688 of 76 S.Ct.: Here, as there, the method of evasion charged was the filing of a false return, and it is apparent that the facts necessary to prove that petitioner "willfully" attempt-

13. The Supreme Court has noted the changes in verbiage between § 7207 and § 3616(a). See Footnote 5 in Berra, at page 134 of 351 U.S., at page 688 of 76 S.Ct., and the dissenting opinion in Achilli, at page 381 of 353 U.S., at page 999 of 77 S.Ct. Compare Footnote 1 in Berra, at page 132 of 351 U.S., at page 687 of 76 S.Ct.

14. The only possible way of avoiding this result is to regard § 7207 as somehow applicable to a situation where, although willful and known to be false, the filing of the return is not with intent to "evade or defeat". This seems too fine a distinction to draw with the content of § 7201 and, in addition, would mean that a *new crime* was created by § 7207, a result which seems to have no support in the 1954 Committee Reports.

15. It is to be noted that the House version of H.R. 8300, 83rd Congress, 2d Session, the bill which emerged as the 1954 Code, would have had Section 7201 broadened and made applicable to mere failure to pay or file a return and thus would have *upgraded* that offense to felony status. The Senate version, on the other hand, was drawn "so as to continue in effect the existing law with respect to the nature of, and the punishment for, the offense of a willful failure to make a tax return." In conference, the House receded. See House and Senate Reports, supra, pp. A424 and 601, respectively, and Conference Report No. 2543 for the same Session, p. 82, concerning Senate Amendments Nos. 506 and 507.

ed to evade taxes by filing a false return (§ 7201) were identical with those required to prove that he "willfully" delivered a return fraudulent or false "as to any material matter" (§ 7207). In this instance § 7201 and § 7207 covered precisely the same ground. It follows then, from Berra, that when the jury resolved the factual issue against the defendant, its function was exhausted and the question whether § 7207 rather than § 7201 should be applied is not for the jury.

This analysis compels us to conclude that the defendant is not entitled to a lesser offense instruction with respect to either § 7203 or § 7207.

 (d) The incorporation of an "Allen charge" among the original, as distinguished from supplemental, instructions. This appeared early in the charge and the trial court's remarks were clearly of the type approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528. The defense complains that there was no need for such an instruction, and that it should have been given, if at all, only after the jury had a reasonable time to arrive at a verdict. One

answer to this complaint is that the trial court's observations were themselves occasioned by comments of defendant's counsel made in his argument to the jury.[16] In any event, the charge is not uncommon and has often been the subject of appellate comment. While the Allen case itself and most others involve situations where the jury has reported its inability to agree, or has so indicated when the court, on its own motion, has called the jury in after some deliberation [17] and while there may be suggestions in some of the cases, including our own,[18] that an Allen charge is premature before some deliberation by the jury, there are instances in the reports where the charge is present in original instructions. United States v. Kenney, C.C.D.Del., 90 F. 257, 274; United States v. Reid, D.C.D. Del., 210 F. 486, 494. Such use in the original charge has been specifically approved by this court. Nick v. United States, 8 Cir., 122 F.2d 660, 674, 138 A. L.R. 791, certiorari denied 314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550. Indeed it can be said, properly it seems to us, that the incorporation of an Allen charge among the original instructions might be, under most circumstances, less harmful

16. " * * * when you retire to your juryroom to deliberate, you are going to have to reach a verdict individually and unanimously.

"You will want to listen to what each of your fellow jurors has to say. You want to hear their opinions. Listen, maybe they picked up something that you missed, but in the final analysis the decision that you reach must be a decision that you reach as an individual and not merely because the majority feels one way and you want to go along with the majority. That is the reason we have twelve people because we feel if all twelve people individually can agree that the chance of making a mistake is minimized and you don't want to make a mistake. The defendant doesn't want you to make a mistake. The government doesn't want you to make a mistake."

17. The cases are numerous but see, for example, Lias v. United States, 4 Cir., 51 F.2d 215, 218, affirmed 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505; United States v. Allis, C.C.E.D.Ark., 73 F. 165,

182–183 (by Judge Walter H. Sanborn) affirmed Allis v. United States, 155 U.S. 117, 123, 15 S.Ct. 36, 39 L.Ed. 91; Culp v. United States, 8 Cir., 131 F.2d 93, 101; Wright v. United States, 8 Cir., 175 F.2d 384, 388, certiorari denied 338 U.S. 873, 70 S.Ct. 143, 94 L.Ed. 535; Kleven v. United States, 8 Cir., 240 F.2d 270, 273.

18. In Hill v. Wabash Ry. Co., 8 Cir., 1 F.2d 626, 632–633, this Court said:

"Of course, the court must wait a reasonable time before giving such instruction; but we think the mere matter of time is not of controlling importance. * * * It will not be presumed that the trial court is sacrificing justice to speed. The question of when such instruction shall be given is a matter resting within its sound discretion, and unless there is abuse thereof, it is not the subject of review. While the time here was less than in any of the cases reviewed, where such instruction has been given, and while it may have been slightly premature, we are not prepared to say that it was an abuse of discretion."

to a defendant's cause than its use in supplemental instructions when a jury disagreement already exists. As Judge Stone said in the Nick case, at page 674 of 122 F.2d:

> "If such statement is made in the face of an existing disagreement in the jury it is quite evident that its entire force would be felt as applying to an existing situation which had developed. Language which might be innocent if uttered before submission of the case to the jury might be regarded as harmful if applied to a specific existing disagreement. Here the caution * * * used by the court seems careful and temperate. It contains no suggestion of coercion and we cannot see how any reasonable member of the jury could believe that he was not entirely free to disagree if he felt such was his duty."

The Supreme Court in Allen, at pages 501–502 of 164 U.S., at page 157 of 17 S.Ct., said:

> "It certainly cannot be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally honest and intelligent as himself."

There is nothing in that opinion which indicates that the quoted language is not to be regarded just as effective in support of an original charge as of a supplemental one. Compare the comments of the Second Circuit in United States v. Tellier, 255 F.2d 441, 449–450, certiorari denied 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62. It is, after all, a matter for the court's discretion. We hold that the use of the charge here was not an abuse of the trial court's discretion and was not error.

4. *Publicity Prejudice.* Errors alleged as to the court's failure to continue the case, as to its failure to impound the jury, as to its denial of a mistrial, and as to its methods of interrogating the jurors relative to the newspaper articles may be considered together for they all relate to trial publicity and its effect.

As has been noted, this was the second trial of the case. The former convictions were nullified by the granting of a new trial due to the awareness of some members of the first jury of prejudicial newspaper publicity. At the inception of the second trial and before the jury had been chosen, the defense requested a continuance because of the existence of a radio news report on the case. This was refused and the court suggested that counsel was entitled, if he wished, to have the panel interrogated "as to whether they have heard anything * * * whether any know anything about the defendant and whether they have formed any opinion, whether they could not sit in the jury box with an open mind * * *." The defense then asked that the jury be impounded and asserted that the ruling on this request would affect the kind of questions asked the jury. The court responded that the matter of impoundment was one which lay in the area of his discretion and that he would exercise it when the time came.

At the completion of the voir dire but before the final selection of the jury the court referred to the fact that he had had an instance before where jurors had read a newspaper article about the case they were trying and that it became necessary to have a new trial because of that. He suggested that they ought not to read newspapers during the trial. The defense renewed its request for impoundment but again the court reserved its ruling. Just before the first noon recess and the taking of any testimony, the court again instructed the jury not to read anything about the case or listen to

any account of it. At this point the impoundment request was denied. At the close of that day the court again admonished the jury and told them not to read the newspapers. Prior to the resumption of testimony the following morning, which was the second and last day of trial, counsel presented to the court page 3A of the St. Louis evening newspaper for the preceding day. In the second column was an article about 7 inches in length bearing a headline "J. W. Janko on Trial in Income Tax Case." In the body of the article were references to the defendant as "a former employe of East Side rackets boss Frank (Buster) Wortman" and as "a former convict" who was found guilty in January in the same case but was granted a new trial when 4 jurors acknowledged that they had read newspaper accounts of the charges against him. It also described the defendant as a former doorman and parking lot custodian "at Wortman's Club Prevue on the East Side." In the fifth column on the same page, bearing the headline "Six Facing Trial on Gambling Tax Charges by U. S." was a longer article relative to the commencement in Federal Court in East St. Louis of a trial of 6 men including "a relative of East Side gang boss Frank (Buster) Wortman" on "charges growing out of their alleged gambling operations" and directed to "making false statements under oath to Internal Revenue service agents and attempting or conspiring to evade payment of federal wagering taxes." The defense then moved for a mistrial. The court made observations as to the differences between the January and the May publicity. In response to the court's question as to whether it wished him to inquire of the jury whether they had read any article or listened to any broadcast, the defense took the position that the article's statement as to the setting aside of the verdict in the first trial would suggest to a juror to make no mention of his reading the article because then the verdict here would also be set aside. At the noon recess on that second day, the evidence hav-ing just been concluded, the jury was impounded.

In his instructions the court reminded the jury of his cautioning them about reading newspaper articles or listening to broadcasts. He referred specifically to the preceding evening's newspaper article and admonished them that if they had had occasion to read any newspaper account or listen to any broadcast they should disregard it. After the jury had returned its verdict and had been polled, the defense, with respect to its motion for a mistrial, asked the court to determine whether any juror had read or heard any of the news articles appearing in the paper or broadcasts. The court indicated that the burden was on the defense to show influence, and pointed out that he had brought all this repeatedly to the attention of the jury during the trial. Counsel indicated unwillingness to make the specific inquiry himself, but stated "I do think the Court should". The court then asked whether any of the jurors was "influenced or moved to your verdict in this case by anything that happened or transpired outside the courtroom." He repeated: "Were any of you persuaded or influenced by anything other than the testimony you heard in the courtroom during the trial of this case and based upon the testimony of this case alone." No juror responded affirmatively to either of these questions.

We feel that upon this record no prejudice to the defendant could possibly have resulted from the presence of the news articles in question. We realize that publicity, in this day of ready and current communications, often presents a vexatious problem to the courts. See Marshall v. United States, supra, and the opinion of concurrence in Shepherd v. State of Florida, 341 U.S. 50, 71 S.Ct. 549, 95 L.Ed. 740. But the facts of Marshall and Shepherd are far different from those presented here. Some element of practicality and realism in matters of this kind is still indicated. It is yet the law that the determination of the issue of publicity prejudice remains primarily a matter for the trial court's dis-

cretion, Marshall v. United States, supra; Rowley v. United States, 8 Cir., 185 F. 2d 523, and that the defense has the burden of showing abuse of discretion and resulting prejudice, Gicinto v. United States, 8 Cir., 212 F.2d 8, 10–11, certiorari denied 348 U.S. 884, 75 S.Ct. 125, 99 L.Ed. 695; Franano v. United States, 8 Cir., 277 F.2d 511, 515. So also is the question whether a jury should be impounded. Holt v. United States, 218 U.S. 245, 250–251, 31 S.Ct. 2, 54 L.Ed. 1021; Kleven v. United States, 8 Cir., 240 F.2d 270, 273 (footnote) and cases cited. Failure to warn a jury not to read or listen to publicity has been held in itself not to be prejudicial in the absence of an indication that any juror had seen or heard the stories mentioned. Ferrari v. United States, 9 Cir., 244 F.2d 132, 139, certiorari denied sub nomine Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78; United States v. Griffin, 3 Cir., 176 F.2d 727, 731, certiorari denied 338 U.S. 952, 70 S.Ct. 478, 94 L.Ed. 588. Failure, after polling, to ask the same question under the same prevailing circumstances certainly cannot then be prejudicial.[19] The trial court here gave repeated and adequate admonitions and it might even be said that he grasped every occasion to do so and to protect the case against possible prejudice to the defendant. Counsel also was given ample opportunity to question the jury directly on these matters but, for reasons sufficient in his good judgment, declined so to do.

We, therefore, find no abuse of discretion by the trial court in connection with any of these points bearing upon alleged publicity prejudice. The cases afford ample precedent for this conclusion.[20]

Mr. Justice Holmes' comment of a half century ago, in Holt v. United States, supra, at page 251 of 218 U.S., at page 6 of 31 S.Ct., as has so often been noted (see, for example, the Ferrari and Griffin cases, supra), is still appropriate: "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

5. *The Sentences.* The defense argument about the sentences divides into claims that (a) they are cruel and unusual and their imposition was an abuse of discretion, and (b) if each count of the indictment charged an offense, it was one under § 7207 which authorizes only a much narrowed range of punishment than does § 7201. In view of our conclusion above with respect to the First Count of the indictment, we are concerned here only with the sentences under the Second and Third Counts.

 The first contention embraces the assertion that the evidence, at most, shows only a single course of conduct which is subject to a single punishment and cannot justify consecutive sentences. This is fully answered by reference to the well settled principle that each count charges a separate crime and that a like offense committed for each taxable year constitutes a separate and distinct crime. Blockburger v. United States, 284 U.S. 299, 305, 52 S.Ct. 180, 76 L.Ed. 306; see Turner v. United States, 8 Cir., 271 F.2d 855, 856. Furthermore, this court has repeatedly said that so long as sentences pronounced are within the allowable limits prescribed by the governing statute, the reasonableness of the sentence is not a matter for review here.

19. As in Gicinto v. United States, supra, at page 10 of 212 F.2d, we do not read Marson v. United States, 6 Cir., 203 F. 2d 904, urged by the defendant, as compelling a contrary conclusion.

20. Stunz v. United States, 8 Cir., 27 F.2d 575, 578; Smith v. United States, 8 Cir., 236 F.2d 260, 269–270, certiorari denied 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118; Franano v. United States, supra;

Dillon v. United States, supra, at page 103 of 218 F.2d; United States v. Griffin, supra; Ferrari v. United States, supra; United States v. Carruthers, 7 Cir., 152 F.2d 512, 519, certiorari denied 327 U.S. 787, 66 S.Ct. 805, 90 L.Ed. 1014. Coppedge v. United States, 106 U.S.App. D.C. 275, 272 F.2d 504, like Marshall and Shepherd, supra, is to be distinguished upon its facts.

Holmes v. United States, 8 Cir., 115 F. 2d 528, 529; Affronti v. United States, 8 Cir., 145 F.2d 3, 10; Jacobsen v. United States, 8 Cir., 260 F.2d 122, 123; see Carlson v. United States, 8 Cir., 274 F. 2d 694, 695.

The second contention rests upon the same arguments advanced relative to the defense's claim for a lesser offense instruction. What we have said above on that issue has full and conclusive application here.

We have reviewed all other claims of error asserted by the defense and conclude that they are without merit.

The case is, therefore, remanded with directions to grant the motion for acquittal under the First Count and to vacate the sentence on that count. In all other respects the judgment below is affirmed.

MATTHES, Circuit Judge (dissenting).

I find myself unable to agree with the majority view insofar as it holds that § 7207 of the Internal Revenue Code of 1954 is not applicable to income tax derelictions.

Apparently, this conclusion was reached by the majority upon a consideration of the history of § 3616(a), as the antecedent of § 7207; the holding in Achilli v. United States, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918, that § 3616(a) of the 1939 Code does not apply to income tax evasions; and the "legislative intent" expressed by Congress in enacting the 1954 section of the Code. From these factors, the majority concludes that it is "unable to detect a significant difference, which would have a bearing on Congressional intent, between § 3616(a) and § 7207," observing that "the mere gathering of the penalty sections into one general chapter" did not evince an intent on the part of Congress "to give § 7207 a greater scope than § 3616(a) had under the 1939 Code."

The stated legislative intent in enacting § 7207 was expressed by Congress in a single sentence: "This section * * * contains no material change from existing law." No reference was made to § 3616 or to any other section of the 1939 Code. It is of importance that at the time the 1954 Code was enacted, the Supreme Court had not yet ruled that § 3616(a) did not apply to evasion of the income tax, and, as noted by Mr. Justice Douglas,[1] it appears that the government was regularly prosecuting minor income tax violations under § 3616(a) at the time § 7207 was enacted. As late as Berra v. United States, 351 U.S. 131, 133, 76 S.Ct. 685, 687, 100 L.Ed. 1013, decided April 30, 1956, the government agreed that "§ 3616(a) was applicable to income tax returns * * *."

In this situation, the presumption is certainly warranted that when Congress enacted § 7207, it recognized that its predecessor had been interpreted as applying to income tax returns, and the statement appearing in the legislative history, above quoted, properly may be regarded as evincing congressional intent to carry forward "existing law," whereby income tax violations were being prosecuted as misdemeanors under § 3616(a), and certainly not as evidence of an intent to the contrary, to-wit, that income tax violations were to be removed from the scope of § 7207.

The next question then, apart from congressional intent in 1954, is whether § 7207 is so identical to § 3616(a) that the ruling of the Supreme Court in the Achilli case as to that section must necessarily determine the application of § 7207. Whether or not Congress actually recognized the objectionable features and deficiencies of § 3616(a), as brought to the fore in Achilli, the fact remains that a *very decided* change is found in the language of § 7207 when it is compared with the language of § 3616(a).

1. The majority opinion in Achilli v. United States, supra, recognized that cases involving the filing of *false returns* had been prosecuted as misdemeanors under § 3616(a). Mr. Justice Douglas, in his dissent, 353 U.S. at page 380, 77 S.Ct. at page 999, pointed out that between October, 1952 and March, 1957, the government prosecuted 175 cases of alleged income tax evasion under § 3616(a).

Section 3616(a) provided: "Whenever any person * * * delivers or discloses to the collector * * * any false or fraudulent list, return, account, or statement, *with intent to defeat or evade the valuation, enumeration, or assessment intended to be made* * * * he shall be fined * * *." (Emphasis supplied.) Section 7207 provides: "Any person who *willfully* delivers or discloses to the Secretary * * * any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined * * *." (Emphasis supplied.)

The deletion of the phrase "with intent to defeat or evade * * *" gains added significance in my mind upon a consideration that this was the very language which gave rise to the overlapping with § 145(b) of the 1939 Code, a factor inducing the ultimate conclusion in Achilli that § 3616(a) was not applicable to *income tax evasions.* Furthermore, by adding the proviso that the delivery must be *willful,* § 7207 is not vulnerable to the attack made upon this deficiency in § 3616(a). See Dillon v. United States, 8 Cir., 218 F.2d 97, at page 103, certiorari granted 349 U.S. 914, 75 S.Ct. 603, 99 L.Ed. 1248, and dismissed 350 U.S. 906, 76 S.Ct. 191, 100 L.Ed. 796.

This Court, and members of the Supreme Court, while occupied with the problem of applying § 3616(a) of the 1939 Code, have remarked upon the new language found in § 7207. The majority opinion concedes that in Dillon this circuit "touched upon the problem" and that "(i)t is to be acknowledged that language in the Dillon opinion, by way of dictum, indicates that this court then felt that § 3616(a) and § 7207 were different and distinguishable." It is my view that the expressions in Dillon bearing upon § 7207 were, and are, sound and relevant, and should not be entirely disregarded as dictum on the basis that the Court there was concerned with the problem of applying the provisions of the 1939 Code. In demonstrating the inapplicability of § 3616(a) to income tax evasion, this Court recognized and commented upon the change found in § 7207, stating, at page 103 of 218 F.2d:

"§ 7207 is entirely different from § 3616. * * * Section 7207 appears in the statutory context with other offenses relating to income tax offenses. It is sufficiently broad *to apply to both income tax derelictions* as well as to those subjects other than income taxes with which § 3616 was in juxtaposition. The only substantive portion of § 3616 which was retained and carried forward in the 1954 revision was placed with income tax derelictions. And then the element of willfulness, absent in § 3616 but previously consistently present in offenses relating to income tax violations, was inserted.

"* * * We conclude that Congress did not intend by § 3616(a) that a nonwillful inaccurate and ipso facto false statement in an income tax return, frequently very complicated, should constitute a crime. *It only made such a false statement a misdemeanor when, by § 7207, it required that the statement be willfully made and known to be fraudulent or false as to a material matter.*" (Emphasis supplied.)

In Berra v. United States, 1956, 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013, Mr. Justice Harlan, in speaking for the majority, ruled that § 145(b) and § 3616(a) covered precisely the same ground, and then, by footnote, observed: "Compare § 7207 of the Internal Revenue Code of 1954, under which the wilful filing of a false return no longer requires the element of an 'intent to defeat or evade' taxes, as was so under the former § 3616(a)."

While the majority opinion in Achilli v. United States, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918, was confined to a discussion of the applicability of § 3616 (a) to income tax evasion, Mr. Justice Douglas, in dissenting in part upon the ground that through administrative construction of the section, numerous in-

come tax convictions had been obtained under § 3616, observed, at page 381 of 353 U.S., at page 999 of 77 S.Ct.:

"I would adhere to the administrative construction that § 3616(a) applied to the income tax. Congress apparently was of that view. For when it came to the Internal Revenue Code of 1954, [26 U.S.C.A.] it re-enacted § 3616(a) as § 7207, eliminating the words 'with intent to defeat or evade' which had caused the overlap with § 145(b). Congress acted, of course, prospectively.

"The fact that Congress acted in 1954 to remove the ambiguity with which we deal today indicates that what we do is not within the judicial competence."

Whether or not it can be said that Congress recognized the overlapping of § 3616(a) and § 145(b), and intended to correct the objectionable features of § 3616(a) at the time the 1954 Code was enacted, the fact remains that § 7207 is distinguished by the absence of features which were accorded great weight by the courts in their conclusions that § 3616 (a) was not applicable to income tax matters.

It is the willful attempt "to evade or defeat" a tax which calls for a felony penalty under § 7201. As observed in Spies v. United States, 317 U.S. 492, 495, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418, various sanctions are required to insure collection of all taxes due the government, and various duties properly may be required of all taxpayers, "without regard to existence of a tax liability." .

In my view, it is the failure to consider this precise factor which tends to confuse, for under § 7207 the proscribed conduct is *not* limited to acts done *for the purpose of evading taxes*. Certainly the government has the right to insist that no person may willfully deliver a fraudulent or false list, return, account, or statement, regardless of whether or not an income tax is actually due, and regardless of whether that person intended to evade a tax. I can visualize that

the majority's view may well work to the detriment of the government in its attempt to administer the income tax laws of the United States, for in any case where the taxpayer has actually filed a return or document which is false or fraudulent in some material respect, the government may often find itself in a position where it has no alternative but to seek a felony conviction, with its corresponding burden of establishing an intent to evade taxes. The 1954 return filed by defendant here presents "a case in point," so to speak. For that year defendant did not falsely understate his income, he did not falsely state amounts withheld, he did not falsely claim nonexistent children, he did not falsely compute or state the tax due and owing. But under the evidence, and with proper instructions, the jury could have found that the listing of his children as "dependents," within the meaning of the Internal Revenue Code, was a false statement as to a material matter. Of course, the government could choose to allege that such false statement was a willful attempt to evade a tax, and so seek a felony conviction under § 7201, but if the prosecution so elected, the defendant would, under proper evidence, be entitled to have the lesser offense of § 7207 submitted to the jury.

If Congress intended to except income tax violations from § 7207, such intent is not manifest to me, and if § 7207 is to be so interpreted, I feel that, in view of the statutory change of language, the comment of the court in Berra v. United States, supra, and the absence of comment in Achilli v. United States, supra, the Supreme Court should, in the first instance, make that pronouncement.

On Petition for Rehearing

BLACKMUN, Circuit Judge.

The defense, by its helpful petition for rehearing, calls our attention to § 6013 of the 1954 Code concerning joint income tax returns by husband and wife and subparagraph (b) (5) (B) thereof reading as follows:

174

"For purposes of section 7206(1) and (2) and section 7207 (relating to criminal penalties in the case of fraudulent returns) the term 're-turn' includes a separate return filed by a spouse with respect to a tax-able year for which a joint return is made under this subsection after the filing of such separate return."

It then argues that it is evident, from this reference to § 7207, that the Code contemplates the application of that section to income tax returns.

This point is raised for the first time on this petition; § 6013 was not men-tioned in the initial briefs, in oral argu-ment nor, indeed, in the dissent. The point is consistent with the government's prosecution of a number of minor tax offenses under § 3616(a) in the 5 years preceding the 1957 decision in Achilli. But the government's original position, taken as far back as 1926 (see page 375 of 353 U.S., page 996 of 77 S.Ct.), that § 3616(a) was not applicable to income tax evasion was then reassumed and up-held by Achilli. If Achilli is right—and this court is bound by it—it seems to us to follow that § 6013's reference to § 7207 does not, singly or in conjunction with those other points which Judge Matthes in his dissent found significant and persuasive, impress an alternative misdemeanor status upon acts originally defined to constitute a felony. The fun-damental question is really whether Con-gress, by inadvertence, effected, with the enactment of § 7207, this duplex result and the consequent placement of a new crime on the statute books. We think it did not.

Neither do we place any particular sig-nificance in the introductory comments of the House and Senate Committee Re-ports on the 1954 Code. We accept the expressed intent to simplify and consoli-date the administrative provisions, but we feel that they do not provide an an-swer to the specific question here.

The petition for rehearing is denied. I am authorized to state that Judge MAT-THES also dissents as to this action.